**D. ORTEGA AND SONS, a partnership,
Appellants,**

v.

**EL PASO ELECTRIC COMPANY,
a corporation, Appellee.**

No. 5636.

Court of Civil Appeals of Texas.

El Paso.

July 1, 1964.

Rehearing Denied July 22, 1964.

Morgan & Boling, Guinn & Guinn, El Paso, for appellant.

Kemp, Smith, Brown, Goggin & White, William Duncan, El Paso, for appellee.

PRESLAR, Justice.

Appellants were plaintiffs in a suit against appellee for the loss of a stack of baled hay destroyed by fire. The jury found that the fire was caused by appellee's electric wires coming to rest on the hay when a defective anchor rod broke during a snow and ice storm. Appellee was found to be negligent in the use of the defective anchor rod and such negligence was found to be the cause of the fire. The jury found that appellants (plaintiffs) also were negligent in stacking the hay to the height to which it was stacked under appellee's wires. Damages were found in the amount of $12,342.96 as the value of the destroyed hay, but judgment was entered for defendant because of the plaintiffs' contributory negligence.

The submission of the contributory negligence issues, their form, and the jury's findings thereon are made the basis of plaintiffs' appeal. Such issues and answers are:

"QUESTION NO. 17

"Do you find from a preponderance of the evidence that Plaintiffs were negligent in stacking the hay stack to the height under the electric lines as was done in this case. ANSWER: 'Yes' or 'No'.

"We answer: Yes.

"QUESTION NO. 18

"Do you find that said negligence of Plaintiffs, if you have so found, was a proximate cause of the burning of the stacks? ANSWER: 'Yes' or 'No'.

"We answer: Yes."

■ Appellants contend there was no evidence to warrant the submission of Issue No. 17, and no evidence to support the jury's answer thereto. We overrule these contentions, for viewed in its most favorable light, there is some evidence. Plaintiff Louis Ortega testified that he stacked much of the hay himself, with the help of others, and on cross-examination he said:

"Q And you also had several other men at the time working for you?

"A Yes, sir.

"Q And, of course, you would not want to stack it up as close as two or three feet to the line, would you?

"A No, sir, because we couldn't work that way. If we did that the wire would be in the way.

"Q All right. That would be dangerous to the men, wouldn't it?

"A Yes, sir.

"Q And to yourself?

"A Yes, sir.

"Q All right. And it would be a hazard to have the hay stacked that close to the line, wouldn't it?

"A Yes, sir."

The answer to the last-quoted question could be construed as testimony to the effect that it was a hazard to the hay to so stack it. There also was evidence that the National Electrical Safety Code established eight-foot clearance for lines going over objects.

■ Appellants contend that the jury's answers to Issues Nos. 17 and 18 are against the overwhelming weight and preponderance of the evidence. We sustain that contention. Even though the above evidence may be considered of probative force, we have concluded from a review and consideration of all of the evidence in the case that the jury's finding on the above issues is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. The jury had before it a definition of negligence and proximate cause. Under those definitions the tests of plaintiffs' negligence, vel non, is what plaintiffs should have reasonably anticipated would happen in the light of common knowledge, as a result of their stacking their hay to the height to which it was stacked. The evidence was that the electric wires were suspended over plaintiffs' hay stack on poles some 450 feet apart, and the line terminated with the last span over the hay stack with the terminal pole braced or held in place by the anchor rod which broke. The hay stack was located some 90 feet from the terminal pole. In considering whether plaintiffs should have anticipated that the hay and wires would probably get together, the distance between the hay and the wires, and the amount such wires would sag, becomes important. The jury had before it the testimony of the plaintiff Louis Ortega that he directed the stacking of the bales of hay in layers, and that he was on the top layer and could walk under the wires; that there was five or six feet clearance between the lower wire and the hay. Other witnesses placed this clearance at four feet, three to four feet, and still others at two to three feet. No witness placed such clearance at less than two feet between the hay and lower line, and it was undisputed that the upper line was two and one-half feet above the lower line. The upper line carried the current and is known as the "hot line". It was established that no danger existed or injury could result from contact with the lower line, and the testimony was that the two lines coming together would produce a short-circuit or arcing. The jury found that the wires caused the fire. Louis Ortega testified that he knew one or both of the lines was charged with electricity. Experts testified that the lines would contract and expand under varying weather conditions; that such was equal for both lines, so that the distance between them would

remain constant; and when expansion occurred the lines would sag. This sag was placed at as much as four feet at a point midway between the poles on the 450-foot span, where it would be greatest. The evidence as to the amount of sag at the point where the hay was located, 90 feet from the terminal pole, was that it would be one foot or "not over one foot". The jury, within their province, could disregard all evidence to the contrary and arrive at the least clearance—two feet for the lower line and four and one-half feet for the hot line —but with only one foot sag, this does not bring the two wires and the hay together. It does not substantiate their finding that the height to which the hay was stacked was a proximate cause of the fire, and that such was negligence. The other evidence which the jury had to consider in that regard was that hay had been stacked at this location for some fifteen years; that the plaintiffs themselves had stacked it here for the past eight or ten years, and that the stack which burned was a normal stack not unlike those of prior years; and that similar weather conditions had occurred in prior years. We are of the opinion that the evidence does not establish a reason for the plaintiffs to anticipate any injury to their hay, and that the finding of the jury in this regard is clearly against the great weight and preponderance of the evidence. The often-followed and quoted case of Houston Lighting & Power Co. v. Brooks (1960) lays down the rules applicable here, 161 Tex. 32, 336 S.W.2d 603, at page 606:

"If the reason to anticipate injury is not established, then no duty arises to act to prevent such an unanticipated injury.

"'Negligence rests primarily upon two elements: (1) reason to anticipate injury, and (2) failure to perform the duty arising on account of that anticipation. The ability to have foreseen and prevented the harm is determinative of responsibility.' 30–B Tex.Jur., p. 179, Sec. 8."

And again at page 606:

"Also, it was said in the case of City of Dallas v. Maxwell, 248 S.W. 667, 670, 27 A.L.R. 927 (Tex.Com.App. opinion, approved by Supreme Court):

"'In this state it is now a settled doctrine that anticipation of consequences is a necessary element in determining not only whether a particular act or omission is actionably negligent, but also whether the injury complained of is proximately caused by such act or omission. Seale v. [Gulf, C. & S. F.] Railway, 65 Tex. 274, 57 Am.Rep. 602; [Texas & P.] Railway [Co.] v. Bigham, 90 Tex. 223, 38 S.W. 162; [Gulf, C. & S. F.] Railway [Co.] v. Bennett, 110 Tex. [262] 270, 219 S.W. 197; [San Antonio & A. P.] Railway Co. v. Behne, Tex.Com.App., 231 S.W. 354. This doctrine is the result of an effort by the courts to avoid as far as possible the metaphysical and philosophical niceties in the age-old discussion of causation, and to lay down a rule of general application which will, as nearly as may be done by a general rule, apply a practical test, the test of common experience, to human conduct when determining legal rights and legal liability. Actual anticipation is of course not in any sense the test; but what one should under the circumstances reasonably anticipate as consequences of his conduct.'"

We have carefully gone over the entire statement of facts and, as indicated, we are of the opinion that the jury was not justified in finding that plaintiffs should have reasonably foreseen or anticipated that stacking the hay to the height to which it was stacked would probably result in injury to it. Therefore, the manner in which appellants stacked the hay could not, under the circumstances here present as revealed by the record, constitute a negligent act proximately causing the fire. Having concluded that the verdict on the issue of contributory negligence is so against the great

weight and preponderance of the evidence as to be manifestly unjust, it becomes our duty to remand this case for a new trial. In re King's Estate, 150 Tex. 662, 244 S.W. 2d 660, at p. 661 (1951).

The judgment of the trial court is reversed and the cause remanded.