Amy A. McCULLOUGH, Individually and as Administrator of the Estate of Kaleb McCullough, Deceased, Appellant

v.

Richard A. GODWIN, Brandon M. Stairs, and Shellie S. Stairs, Appellees.

No. 12–05–00422–CV.

Court of Appeals of Texas, Tyler.

Feb. 9, 2007.

Rehearing Overruled March 9, 2007.

Steven W. Stark, Stark & Groom, P.C., Athens, for appellant.

Brent Howard, Parker & Bunt, Tyler, Douglas W. Lyons, Jr., Kirlin, Campbell & Keating, Houston, Keith W. Starr, for appellees.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION

JAMES T. WORTHEN, Chief Justice.

Amy A. McCullough, individually and as administrator of the estate of Kaleb McCullough, deceased, appeals the trial court's orders granting summary judgment in favor of Appellees Richard A. Godwin, Brandon M. Stairs, and Shellie S. Stairs. McCullough raises eight issues on appeal. We affirm.

## BACKGROUND

While married, McCullough and Godwin had a son, Kaleb, on November 21, 1995. McCullough and Godwin divorced in October 1997. By the final divorce decree, McCullough and Godwin were named joint managing conservators of Kaleb. McCullough was awarded possession of Kaleb.

On Friday, June 27, 2003, Godwin picked up Kaleb from McCullough to exercise his visitation rights. On Sunday, June 29, 2003, Godwin and Kaleb traveled to the Stairses' home for a planned outing on Cedar Creek Lake. Once at the lake, this group and others traveled by boat to a place on the water known as "Jet Boat Cove." Godwin traveled to Jet Boat Cove in a boat owned by his friend Kevin Hazelip. Kaleb traveled to Jet Boat Cove with the Stairses in their boat.[1]

Early that afternoon, the group, which also included Godwin's friend Mark Johannesen and his two minor children, soon arrived at Jet Boat Cove. The boats were anchored, and Godwin left Hazelip's boat and waded over to the Stairses' boat. Godwin removed Kaleb from the Stairses' boat and took off the flotation vest Kaleb was wearing.

Kaleb was permitted to swim and play in the water at Jet Boat Cove along with several other children present. Kaleb also played on the banks of Jet Boat Cove. While he played, Godwin and others visited with one another, listened to music, and consumed alcoholic beverages.

The children congregated near the Stairses' boat and played on and around an

---

1. The record reflects that Kaleb wore a life preserver provided by the Stairses while he traveled to Jet Boat Cove in their boat.

inflatable water toy[2] owned by the Stairses. Kaleb and the other children were playing a game they called "shark," where the children would place themselves inside the open portion of the tube while the tube was upside down, i.e., the open portion of the tube not covered by the nylon cloth was facing down. At one point, Godwin, who had also used the tube, instructed Kaleb to stop playing "shark" because Godwin could not see Kaleb.

Approximately one hour after the time he was last seen by anyone, Shellie Stairs discovered Kaleb's body beneath the surface of the water. His upper torso had become ensnared between the tube and the nylon cloth while the tube was upside down. Although kept on life support for some time afterwards, Kaleb later died.

McCullough filed the instant lawsuit on October 10, 2003 asserting wrongful death and survival actions, negligence, and gross negligence, and seeking both compensatory and exemplary damages. Subsequently, Godwin and the Stairses each filed motions for summary judgment.[3] In his motion, Godwin claimed that McCullough's action was barred by the parental immunity doctrine. By their motion, the Stairses argued that they had no duty to supervise Kaleb because Godwin was in possession of Kaleb at all times. Alternatively, the Stairses argued that McCullough had no evidence to support that they owed Kaleb a legal duty. The Stairses further argued that the elements

for exemplary damages did not exist. McCullough responded to the defendants' motions. Subsequently, McCullough amended her petition and alleged additional duties owed by the defendants to Kaleb apart from a duty to supervise. Ultimately, the trial court granted Godwin's and the Stairses' respective motions for summary judgment. This appeal followed.

### SUMMARY JUDGMENT STANDARDS OF REVIEW

■ In reviewing a traditional motion for summary judgment, this court must apply the standards established in *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985), which are as follows:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true;

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*See id.; May v. Nacogdoches Mem'l Hosp.,* 61 S.W.3d 623, 628 (Tex.App.-Tyler 2001, no pet). To prevail on a motion for summary judgment, a party must conclu-

---

2. This water toy consisted of an inner tube approximately the size of a truck tire inner tube and partially covered by a nylon cloth. The toy was intended to be pulled behind a motor boat. On the toy was imprinted a warning, which stated, in pertinent part, as follows:

 **DEATH OR SERIOUS INJURY CAN OCCUR!** .... NOT FOR USE BY CHILDREN UNDER SIX (6) YEARS OF AGE. THIS PRODUCT SHOULD NEVER BE USED BY CHILDREN EXCEPT UNDER

ADULT SUPERVISION. .... THIS IS NOT A PERSONAL FLOTATION DEVICE. .... ALWAYS WEAR A U.S. COAST GUARD APPROVED TYPE III (PFD) SKI VEST OR AS RECOMMENDED BY PROPER GOVERNING AUTHORITIES....

3. Godwin filed a traditional motion for summary judgment, while the Stairses filed both traditional and no evidence motions for summary judgment. *See* Tex.R. Civ. P. 166a(a), (i).

sively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). A movant must either negate at least one essential element of the nonmovant's cause of action or prove all essential elements of an affirmative defense. *See Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *see also MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986). Since the burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). We are not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits, and other summary judgment proof. *See Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 932 (Tex.1952). The only question is whether or not an issue of material fact is presented. *See* Tex.R. Civ. P. 166a(c).

■ Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *See, e.g., City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979). All theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* Tex.R. Civ. P. 166a(c).

■ Furthermore, after adequate time for discovery, a party without presenting summary judgment evidence may also move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex.R. Civ. P. 166a(i). The motion must state the elements as to which there is no evidence. *Id.* Once a no evidence motion has been filed in accordance with Rule 166a(i), the burden shifts to the nonmovant to bring forth evidence that raises a fact issue on the challenged evidence. *See Macias v. Fiesta Mart, Inc.,* 988 S.W.2d 316, 316–17 (Tex.App.-Houston [1st Dist.] 1999, no pet). A no evidence motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). If the evidence supporting a finding rises to a level that would enable reasonable, fair minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *See Havner,* 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, and the legal effect is that there is no evidence. *See Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983).

■ On appeal, we will uphold a no evidence summary judgment only if the summary judgment record reveals no evidence of the challenged element, i.e., (a) there is a complete absence of evidence as to the challenged element; (b) the evidence offered to prove the challenged element is no more than a mere scintilla; (c) the evidence establishes conclusively the opposite of the challenged element; or (d) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove the challenged element. *See Taylor–Made Hose, Inc. v.*

*Wilkerson,* 21 S.W.3d 484, 488 (Tex.App.-San Antonio 2000, pet. denied) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEXAS L.REV. 361, 362–63 (1960)).

## CLAIMS AGAINST GODWIN

In her first, second, third, and eighth issues, McCullough addresses the trial court's granting of Godwin's motion for summary judgment under the parental immunity doctrine. More specifically, in her first issue, McCullough argues generally that the trial court erred in granting Godwin's motion for summary judgment.[4] In her second issue, McCullough argues that the trial court erred in granting Godwin's motion for summary judgment because her summary judgment proof raised a fact issue concerning whether Godwin abandoned and abdicated his parental duty.[5]

### *Parental Immunity Doctrine*

■ Parental immunity has been adopted in Texas in order to provide parents with a certain amount of protection from litigation concerning the decisions they make in their capacity as parents. *See Jilani v. Jilani,* 767 S.W.2d 671, 671–72 (Tex.1988); *Plainview Motels, Inc. v. Reynolds,* 127 S.W.3d 21, 41 (Tex.App.-Tyler 2003, pet. denied). The elements of the defense of parental immunity are as follows: (1) the plaintiff is an unemancipated minor; (2) the defendant is the plaintiff's parent; (3) the defendant was exercising parental authority or discretion; (4) the defendant was negligent in exercising the parental authority or discretion; and (5) the defendant's negligence caused the plaintiff to suffer personal injury. *Id.*

■ In holding that certain situations do not amount to an exercise of parental authority or discretion, Texas courts have specifically held that the doctrine does not apply (1) when a parent commits a willful, malicious, or intentional wrong against a child or abandons or abdicates his parental responsibility, (2) when the act complained of arises outside of a normal family relationship of a parent to a child, such as a business activity in which the child is the employee and the parent is the employer, and (3) when damages are caused to the child by the parent's negligently operating a motor vehicle. *See Reynolds,* 127 S.W.3d at 41; *Hall v. Martin,* 851 S.W.2d 905, 909 (Tex.App.-Beaumont 1993, writ denied). On the other hand, parents have immunity from their child's cause of action for injuries arising out of essentially parental activities involving issues of (1) supervision, (2) discipline, (3) provision of a home, (4) provision of food, (5) schooling, (6) medical care, (7) recreation, and (8) family chores. *See Felderhoff v. Felderhoff,* 473 S.W.2d 928, 933 (Tex.1971); *Reynolds,* 127 S.W.3d at 41–42; *see also, e.g., Hoffmeyer v. Hoffmeyer,* 869 S.W.2d 667, 668 (Tex.App.-Eastland 1994, writ denied) (parental immunity applied to claim that parent was negligent in supervising child when parent left loaded gun in the room); *Hall,* 851 S.W.2d at 910 (parental immunity applied to claim that parent was negligent in entrusting a motor scooter to child without instructions or helmet); *Shoemake v. Fogel, Ltd.,* 826 S.W.2d 933, 938 (Tex.1992) (parental immunity applied to claim for negligent supervision of child who drowned).

In the instant case, the summary judgment record indicates that (1) seven year old Kaleb was an unemancipated minor;[6]

---

4. *See, e.g., Malooly Brothers, Inc. v. Napier,* 461 S.W.2d 119, 120 (Tex.1970).

5. A more specific explanation of McCullough's third and eighth issues is set forth below.

6. *See* TEX. FAM.CODE ANN. §§ 31.001(a),

(2) Godwin was Kaleb's father; (3) Godwin was supervising Kaleb during recreation, a parental activity; (4) Godwin is alleged to have been negligent in his supervision of Kaleb during this activity; and (5) Godwin's alleged negligence allegedly contributed to Kaleb's death. The record does not reveal any evidence to the contrary, nor does McCullough dispute such evidence in her brief.

### Abandonment and Abdication of Parental Responsibilities

■■■ McCullough contends that the trial court erred in granting Godwin's motion for summary judgment because her summary judgment proof raised a fact issue concerning whether Godwin abandoned and abdicated his parental duty. In support of her contention, McCullough cites evidence that Godwin was intoxicated in spite of language in the divorce decree prohibiting the consumption of alcohol during periods of visitation. McCullough further cites to evidence that Godwin did not make any provision for Kaleb's health and safety by providing sunscreen, a life vest, or supervision while Kaleb played on the water toy. McCullough further asserts that evidence that Godwin was riding a jet ski during the time in question supports this exception to the parental immunity doctrine. However, McCullough cites no authority supporting that such actions amount to abandonment and abdication of parental responsibility. The term "abandon" generally means to give up absolutely, to forsake entirely, to renounce utterly, to relinquish all connection with or concern in, or to desert. *See Railroad Comm'n of Texas v. Waste Mgmt. of Texas, Inc.*, 880 S.W.2d 835, 843 (Tex.App.-Austin 1994, no writ); BLACK'S LAW DICTIONARY 2 (6th ed. 1990). The definition of "abdication" is similarly absolute. *See* BLACK'S LAW DICTIONARY 5 (6th ed. 1990) (a renunciation,

quitting, and relinquishing, so as to have nothing further to do with a thing, or the doing of such actions as are inconsistent with the holding of it). In *Platt v. Moore*, 183 S.W.2d 682 (Tex.Civ.App.-Amarillo 1944, writ ref'd w.o.m.), the court noted that the abandonment of a child such as is contemplated in certain adoption scenarios consists of an absolute relinquishment of the custody and control of the child and the willful purpose and intention to relinquish the benefit of the rights to which the parent is entitled under the law. *Id.* at 684. Based on our review of the record in the instant case, we cannot conclude that Godwin's behavior constituted such a desertion or abandonment. *See id.* Considering the foregoing authority, we hold that the evidence cited by McCullough does not raise a genuine issue of material fact concerning whether Godwin abandoned and abdicated his parental duty.

### Malice

■■■ McCullough further argues that she has pleaded facts and that the summary judgment evidence will support that Godwin has committed endangerment of a child and criminally negligent homicide. Additionally, McCullough states that the summary judgment evidence also demonstrates that the negligence and gross negligence of Godwin rise to the level of malice. Neither McCullough's supplemental response to the defendants' motions for summary judgment nor her brief on appeal contain citations to the record where such summary judgment evidence supporting malicious conduct can be located. Further, McCullough does not offer any detail as to what evidence supports her contention that Godwin acted with malice. As such, by making only general reference to the summary judgment record in support

101.003(a), (Vernon 2002).

of this portion of her second issue, McCullough has waived error, if any.[7] *See* TEX. R.APP. P. 38.1(h); *Abdelnour v. Mid Nat'l Holdings, Inc.*, 190 S.W.3d 237, 241–42 (Tex.App.-Houston [1st Dist.] 2006, no pet.). McCullough's second issue is overruled.

### Failure to Raise Grounds in Motion for Summary Judgment

In her third issue, McCullough argues that the trial court erred in granting Godwin's motion for summary judgment because the motion did not address the issues concerning abandonment and abdication of his parental duties. Parental immunity is an affirmative defense. *See Shoemake*, 826 S.W.2d at 937. As such, Godwin was entitled to move for summary judgment on such an affirmative defense. *See* TEX.R. CIV. P. 166a(b). To meet his burden of proof, Godwin was required to demonstrate that there was no genuine issue as to any material fact concerning the elements of the parental immunity doctrine and that he was entitled to judgment as a matter of law. *See Reynolds*, 127 S.W.3d at 41; *see also* TEX.R. CIV. P. 166a(c). The issue of abandonment and abdication of Godwin's parental duties is not an element of the parental immunity doctrine, but rather an exception thereto. *Id.* We hold that Godwin was not required to preemptively negate exceptions to the parental immunity doctrine. McCullough's third issue is overruled.

### Constitutionality of Parental Immunity Doctrine

In her eighth issue, McCullough argues that the parental immunity doctrine is unconstitutional and, therefore, should not be applied. A statute is presumed to be constitutional and should not be struck down by an intermediate appellate court except on clear and certain grounds. *See Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex.1983). "It is to be presumed that the Legislature has not acted unreasonably or arbitrarily; and a mere difference of opinion, where reasonable minds could differ, is not a sufficient basis for striking down legislation as arbitrary or unreasonable." *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex.1968). The burden of demonstrating the unconstitutionality of the statute rests on the parties assailing the statute. *McCulloch v. Fox & Jacobs, Inc.*, 696 S.W.2d 918, 923 (Tex.App.-Dallas 1985, writ ref'd n.r.e.).

In *Felderhoff*, the appellant argued generally that the parental immunity doctrine should be completely abrogated because it is out of date. *See Felderhoff*, 473 S.W.2d at 933. In addressing the appellant's contention, the court stated, in pertinent part, as follows:

.... We trust that it is not out of date for the state and its courts to be concerned with the welfare of the family as the most vital unit in our society. We recognize that peace, tranquility and discipline in the home are endowed and inspired by higher authority than statutory enactments and court decisions. Harmonious family relationships depend on filial and parental love and respect which can neither be created nor preserved by legislatures or courts. The most we can do is to prevent the judicial system from being used to disrupt the wide sphere of reasonable discretion which is necessary in order for parents to properly exercise their responsibility to provide nurture, care, and discipline for their children. These parental duties, which usually include the provi-

---

7. We are unable to refer back to the record citations in McCullough's statement of facts absent a modicum of detail concerning the nature of the evidence.

sion of a home, food, schooling, family chores, medical care, and recreation, could be seriously impaired and retarded if parents were to be held liable to lawsuits by their unemancipated minor children for unintentional errors or ordinary negligence occurring while in the discharge of such parental duties and responsibilities. It is in this sphere of family relations between parent and child that the rule of immunity from litigation continues to find justification and validity.

*Id.* The court, thus, declined to abrogate the doctrine. *Id.* And although the supreme court did not consider the constitutionality of the parental immunity doctrine, its analysis was nonetheless instructive as to the doctrine's purpose.

■■■ The Beaumont court of appeals has considered the question of constitutionality of the parental immunity doctrine. In so doing, the court succinctly concluded that "the question of constitutionality [of the parental immunity doctrine] is no longer in doubt." *Hall,* 851 S.W.2d at 910. Having considered the authority upon which McCullough relies, we adopt the position of our sister court and hold that the parental immunity doctrine is not unconstitutional. McCullough's first and eighth issues are overruled.

### CLAIMS AGAINST THE STAIRSES

McCullough's fourth, fifth, sixth, and seventh issues relate to her claims against the Stairses.

### Failure to Raise Grounds in Motion for Summary Judgment

■■■ In her sixth issue, McCullough argues that the trial court granted summary judgment in favor of the Stairses on grounds not raised in their motion for summary judgment. The trial court cannot grant a summary judgment on grounds not presented in the motion. *See Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 204 (Tex.2002); *Bill De La Garza & Assoc., P.C. v. Dean & Ongert,* 851 S.W.2d 371, 372–73 (Tex.App.-Houston [1st Dist.] 1993, no writ). A nonmovant may amend her pleadings to avoid summary judgment by adding grounds or claims not raised in the motion for summary judgment. *See Smith v. Atlantic Richfield Co.,* 927 S.W.2d 85, 88 (Tex.App.-Houston [1st Dist.] 1996, writ denied). In such a scenario, a reply brief does not suffice to rebut a claim added in an amended pleading. *Id.* Rather, in order to enable the trial court to dispose of the entire case, the movant must amend or supplement his motion for summary judgment after a petition is amended to address the new ground or claim. *Id.*

■■■ In the case at hand, the Stairses argued in their traditional motion for summary judgment that they had no duty of supervision, care, or protection with regard to Kaleb because Godwin was in possession of Kaleb at all times. In essence, the Stairses argued that Godwin, as Kaleb's father, had superior and superseding duties with regard to Kaleb. Thereafter, McCullough timely filed her second amended petition,[8] in which she alleged that the Stairses' owed Kaleb duties in addition to a duty of supervision. As such, since the Stairses' traditional motion failed to specifically address each of the duties that McCullough's live pleadings alleged the Stairses owed Kaleb, the trial court could not properly grant a traditional summary judgment on those grounds. *See*

---

**8.** McCullough's second amended petition was filed on October 26, 2005. The hearing on the Stairses' motion for summary judgment was held on November 14, 2005. *See* TEX.R. CIV. P. 63; *Sosa v. Central Power & Light,* 909 S.W.2d 893, 895 (Tex.1995).

*Dean & Ongert,* 851 S.W.2d at 372–73. McCullough's sixth issue is sustained.[9]

### Duty of Care

In her fourth, fifth, and seventh issues, McCullough addresses the trial court's granting of the Stairses' motion for summary judgment.[10]

#### No Evidence Motion for Summary Judgment

 In her second amended petition, McCullough pleads causes of action for wrongful death, survival, negligence, and gross negligence. McCullough's wrongful death and survival actions require proof of a wrongful act. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 71.002, 71.021 (Vernon 1997). McCullough's claim of gross negligence requires proof of an act or omission involving an extreme degree of risk of which the actor had subjective awareness, but proceeded with conscious indifference to the rights, safety, or welfare of another. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(11) (Vernon Supp. 2006). For each of these causes of action, the facts underlying the elements of "wrongful act" or "act or omission" pleaded by McCullough are grounded in negligence. Additionally, McCullough alleged that the Stairses are liable for simple negligence. Thus, the issue of whether there is summary judgment evidence that the Stairses owed Kaleb a legal duty relates to each of McCullough's causes of action.[11]

 To prove an action for negligence, the plaintiff must establish the defendant had a legal duty. *See Graff v. Beard,* 858 S.W.2d 918, 919 (Tex.1993). A duty is a legal obligation that requires the defendant to conform to a certain standard of conduct. *See Way v. Boy Scouts of America,* 856 S.W.2d 230, 233 (Tex.App.-Dallas 1993, writ denied). Every person has a duty to exercise reasonable care to avoid a foreseeable risk of injury to others. *Lukasik v. San Antonio Blue Haven Pools, Inc.,* 21 S.W.3d 394, 403 (Tex.App.-San Antonio 2000, no pet.). The existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983).

 To determine whether a duty exists under common law, we apply a risk-utility balancing test. *See Read v. Scott Fetzer Co.,* 990 S.W.2d 732, 736 (Tex.1998). We consider several interrelated factors including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magni-

---

9. As set forth below, McCullough's allegations are based in negligence. In spite of her amended pleadings, McCullough had the burden to present evidence to overcome the Stairses' no evidence motion for summary judgment. *See* Tex.R. Civ. P. 166a(i); *Macias,* 988 S.W.2d at 316–17.

10. In her fourth issue, McCullough argues generally that the trial court erred in granting the Stairses' motion for summary judgment. In her fifth issue, McCullough argues that the trial court erred in granting the Stairses' motion for summary judgment because her summary judgment proof raised a fact issue concerning whether the Stairses breached a duty they owed a duty Kaleb. In her seventh issue,

McCullough argues that the trial court erred in granting the Stairses summary judgment because the summary judgment evidence raised a fact issue on exemplary damages.

11. The additional allegations in McCullough's second amended petition are based in negligence. *See, e.g., Prather v. Brandt,* 981 S.W.2d 801, 806 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (Section 390 of Restatement Second of Torts applied as negligent entrustment); *Woolridge v. East Tex. Baptist University,* 154 S.W.3d 257, 259 (Tex.App.-Texarkana 2005, no pet.) (doctrine of attractive nuisance based in negligence).

tude of the burden of guarding against the injury, and the consequences of placing the burden on the defendants. *See Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex.1994). When these facts are balanced, the most important factor to consider is the foreseeability of the risk. *See Texas Home Mgmt. v. Peavy*, 89 S.W.3d 30, 36 (Tex. 2002). The test for foreseeability is what a person should, under the circumstances, reasonably anticipate as a consequence of her conduct. *See Foster v. Denton ISD*, 73 S.W.3d 454, 465 (Tex.App.-Fort Worth 2002, no pet.). Foreseeability alone, however, is not enough to create a duty. *Golden Spread Council v. Akins*, 926 S.W.2d 287, 290–91 (Tex.1996). Additionally, we consider (1) whether one party had a superior knowledge of the risk, *see Graff*, 858 S.W.2d at 920, (2) whether a party had a right to control the conduct of another, *id.*, (3) whether societal changes require the recognition of new duties, *see Clark*, 668 S.W.2d at 310, (4) whether the creation of a new duty would be in conflict with existing statutory law, *see Thapar v. Zezulka*, 994 S.W.2d 635, 639–40 (Tex. 1999), and (5) whether there are countervailing concerns that would support or hinder the recognition of a new duty, *see Bird*, 868 S.W.2d at 769.

*Risk, Foreseeability and Likelihood of Injury*

 Anticipation of consequences is a necessary element in determining whether a particular act or omission is actionably negligent. *See Houston Lighting & Power Co. v. Brooks*, 161 Tex. 32, 336 S.W.2d 603, 606 (Tex.1960). In other words, though a person's act or omission may have caused injury or damage, the person is not to be held responsible or negligent if he or she could not have foreseen the harmful occurrence or situation. *See D. Ortega & Sons v. El Paso Electric Co.*, 381 S.W.2d 147, 149 (Tex.Civ.App.-El Paso 1964, no writ).

Actual anticipation is not the test; the test is what one should, under the circumstances, reasonably anticipate as consequences of his conduct. *Id.* Moreover, foreseeability does not require the actor to anticipate the specific incident or precise manner of injury, but only requires that he reasonably anticipate the general character of the injury. *Lukasik*, 21 S.W.3d at 403–04.

Here, the record indicates that the inner tube in question was intended to be ridden while towed behind a motorboat. However, in this instance, it was floating near the Stairses' boat, which was anchored in shallow water. The evidence further indicates that on the inner tube was imprinted a warning stating, in pertinent part, that (1) death or serious injury can occur while using the inner tube, (2) children should be supervised by an adult while using the inner tube, and (3) the inner tube is not a substitute for an approved personal flotation device. The Stairses concede that certain risks are inherent to boating. The record further indicates that the Stairses knew that children were playing on the inner tube.

However, the summary judgment evidence also indicates that the Stairses transported Kaleb to Jet Boat Cove in their boat, that Godwin traveled to Jet Boat Cove in another boat, and that upon the group's arrival at Jet Boat Cove, Godwin retrieved Kaleb from Stairses' boat and removed the flotation vest Shellie Stairs had placed on Kaleb. The summary judgment record further reflects that Godwin used the tube and played with Kaleb on the tube. There is no evidence in the summary judgment record indicating that Godwin sought further assistance from the Stairses in supervising Kaleb after he initially retrieved Kaleb from their care. There is further no evidence in the summary judgment record that either Brandon

or Shellie Stairs was aware that Godwin was not supervising Kaleb.

A parent of a child has a duty to care for, control, protect, and reasonably discipline his child. *See* TEX. FAM.CODE ANN. § 151.001(a)(2) (Vernon Supp.2006). While not absolute, a parent's rights to care, custody, and management of his child are constitutional in nature and considered a precious fundamental liberty interest. *See In the Interest of K.M.B.*, 91 S.W.3d 18, 23 (Tex.App.-Fort Worth 2002, no pet.); *see also Santosky v. Kramer*, 455 U.S. 745, 753–59, 102 S.Ct. 1388, 1395–97, 71 L.Ed.2d 599 (1982). Such rights and duties are subject to (1) a court order affecting them, (2) an affidavit whereby that parent relinquishes his parental rights, and (3) an affidavit by the parent designating another person or agency to act as managing conservator. *See* TEX. FAM.CODE ANN. § 151.001(d) (Vernon Supp. 2006).

Another exception to a parent's fundamental right exists at common law. A person, who through kindness, charity, or other motive has received a child into his or her family and treats the child as a member thereof stands in loco parentis as long as the child remains in the family. *See Schrimpf v. Settegast*, 36 Tex. 296, 302–03 (Tex.1871). "In loco parentis" means "in the place of the parent" and generally refers to a person in the role of a parent who assumes the obligations incident to the parental relationship, though without the formality of a legal adoption. *See In re Martin*, 147 S.W.3d 453, 456 (Tex.App.-Beaumont 2004, pet. denied). An in loco parentis relationship typically arises when a parent is unable or unwilling to care for the child and a nonparent assumes the duties and responsibilities of the parent. *Id.*

In *In re Martin*, the parents of a child who drowned in a swimming pool sued the Martins, who owned the property on which the swimming pool was located. *Id.* at 455. The Martins filed a petition for writ of mandamus after the trial court struck their third party petition, by which they sought to join as a party to the suit the child's uncle, who had been babysitting the child at the time of the incident. *Id.* The court held that the uncle, who was temporarily supervising the child as a babysitter, was not considered to be acting in loco parentis. *Id.* at 456.

In the case at hand, Godwin, as Kaleb's father, had a statutory duty to care for, control, and protect Kaleb. *See* TEX. FAM.CODE ANN. § 151.001(a)(2). Although Kaleb was physically separated from Godwin while traveling to Jet Boat Cove with the Stairses, upon the group's arrival at Jet Boat Cove, Godwin took Kaleb from the Stairses' boat and removed the life jacket Shellie Stairs had placed on Kaleb. There is no evidence of record indicating that Godwin sought to relinquish his parental rights and duties, or that the Stairses otherwise acted in loco parentis. *See* TEX. FAM.CODE ANN. § 151.001(d); *In re Martin*, 147 S.W.3d at 456.

Overall, the record indicates that the Stairses were aware of a level of risk inherent to boating. Further, as the owners of the inner tube in question, the Stairses should have been aware of the warnings imprinted on it. Thus, it reasonably follows that the Stairses could foresee that injury could occur and children should be supervised while using their inner tube. Nonetheless, the record also indicates that the Stairses were aware that Kaleb's father was present and had taken Kaleb from their boat. There is no evidence that either Brandon or Shellie Stairs was aware that Godwin was not supervising Kaleb. As such, we conclude that the Stairses

could have reasonably relied on the fact that Godwin would adhere to his fundamental statutory duty of care, custody, and protection with regard to Kaleb. Thus, in spite of their knowledge of the inherent risks of boating and the warnings imprinted on the inner tube, we hold that a reasonable person under these circumstances would not foresee that a child, whose parent was present and had a duty of care with regard to that child, would drown while playing on an inner tube floating in approximately three feet of water.

*Social Utility, Magnitude of Burden, and Consequences of Shifting Burden*

We next consider the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendants. *See Bird,* 868 S.W.2d at 769. We note that there is no evidence in the record to support that water recreation is a socially useful activity. Nonetheless, we recognize that recreation generally is socially useful. Turning to the issue of burden, in this case supervising a minor child, we reiterate that such a duty is statutorily imposed on the child's parent. *See* TEX. FAM.CODE ANN. § 151.001(a)(2). Furthermore, a parent's right to care, custody, and management of his child is constitutional in nature and considered a precious fundamental liberty interest. *See In the Interest of K.M.B.,* 91 S.W.3d at 23. Indeed, a parent's duty to supervise his child is significant, and breach of such a duty can undoubtedly have dire consequences. However, the law does not favor shifting this statutorily imposed responsibility from the parent absent unique circumstances not present in the case at hand. *See, e.g.,* TEX. FAM.CODE ANN. § 151.001(d); *In re Martin,* 147 S.W.3d at 456.

*Other Factors*

We further consider (1) whether one party had a superior knowledge of the risk, *see Graff,* 858 S.W.2d at 920, (2) whether a party had a right to control the conduct of another, *id.,* (3) whether societal changes require the recognition of new duties, *see Clark,* 668 S.W.2d at 310, (4) whether the creation of a new duty would be in conflict with existing statutory law, *see Thapar,* 994 S.W.2d at 639–40, and (5) whether there are countervailing concerns that would support or hinder the recognition of a new duty, *see Bird,* 868 S.W.2d at 769. In the instant case, two risks were present—the risk of drowning that exists generally in situations involving minor children and water play and the risks implicit from the warnings imprinted on the inner tube. The record does not indicate whether Godwin had any knowledge of the warnings on the inner tube. However, the record reflects that Godwin was aware there was risk involved with Kaleb swimming underwater by the tube as he instructed Kaleb to stop playing "shark" because he could not see Kaleb. Furthermore, the record reflects that Godwin was aware that Kaleb was not a strong swimmer.

As set forth above, Godwin had the statutory right to control Kaleb's conduct. No exceptions to Godwin's rights and duties as Kaleb's father are supported by the summary judgment evidence. Moreover, were we to hold that the Stairses had a duty of care, custody, control, or protection with regard to Kaleb, such a duty would encroach upon the fundamental statutory duties already imposed upon Godwin as Kaleb's father. There is no evidence of record to assist in our inquiry as to whether societal changes require the recognition of new duties or whether there are countervailing concerns, apart from the conflict with already existing statutory duties, that

would support or hinder the recognition of a new duty.

Having considered the aforementioned factors, we conclude that under risk-utility analysis there was no summary judgment evidence to support that the Stairses owed Kaleb a legal duty. As such, we hold that the trial court did not err in granting the Stairses' no evidence motion for summary judgment. There was no evidence in the summary judgment record to support the "wrongful act" element of McCullough's wrongful death and survival actions, both grounded in negligence. Moreover, there was neither evidence of the act or omission element of her gross negligence action inasmuch as the underlying act or omission was also grounded in negligence nor the

duty element of her negligence action. McCullough's fourth, fifth, and seventh [12] issues are overruled.

### DISPOSITION

We have sustained McCullough's sixth issue. However, that issue is not dispositive. Having overruled McCullough's first, second, third, fourth, fifth, seventh, and eighth issues, we *affirm* the trial court's judgment.

12. McCullough's seventh issue relating to exemplary damages is dependent on her gross negligence action. *See* TEX. CIV. PRAC. & REM. CODE ANN § 41.003(a)(3) (Vernon 2006).