# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-20-00439-CV

**April Brockwell Marek and John Brockwell, Each Individually and as Representative of the Estate of Justin Brockwell, Deceased, Appellants**

**v.**

**Jamie Slayden and David Slayden, Appellees**

### FROM THE 146TH DISTRICT COURT OF BELL COUNTY
### NO. 305,859-B, THE HONORABLE JACK WELDON JONES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

April Brockwell Marek and John Brockwell, individually and as representatives of the estate of Justin Brockwell (collectively, "the Brockwells") filed suit against Jamie Slayden and David Slayden (collectively, "the Slaydens") asserting statutory wrongful death and survival actions based on the death of their son, Justin Brockwell. *See* Tex. Civ. Prac. & Rem. Code §§ 71.004 (parents of decedent may sue to recover their own damages resulting from decedent's death); .021 (providing for survival of cause of action by which decedent may have sought recovery for personal injuries, pain and suffering, and other damages suffered before death).[1] The Slaydens filed a motion for summary judgment, which the trial court granted. The

---

[1] As part of their statutory wrongful death and survival claims, the Brockwells were required to establish that a wrongful act occurred. *McCullough v. Godwin*, 214 S.W.3d 793, 805 (Tex. App.—Tyler 2007, no pet.); *see also* Tex. Civ. Prac. & Rem. Code §§ 71.002(b), .021. The Brockwells contended that there are three wrongful acts at issue here: (1) general negligence; (2) conduct giving rise to liability for premises defect; and (3) gross negligence.

Brockwells appeal, arguing that they raised genuine issues of material fact as to each of their claims. We affirm the summary judgment.

## BACKGROUND

Justin Brockwell was driving a car on FM 436 in Bell County when he lost control of the vehicle and crashed into a cement culvert adjacent to the roadway in the right-of-way owned by the Texas Department of Transportation (TxDOT). The Brockwells alleged that the culvert had a vertical face that was at a 90-degree angle to the ground rather than a sloped face that "would have allowed his vehicle to safely drive over the culvert."

The Brockwells sued the Slaydens, who owned property off FM 436 that they accessed using a driveway that passed over the culvert that Justin Brockwell crashed into. To support their wrongful death and survival claims, the Brockwells asserted causes of action for negligence, gross negligence, and premises liability. The Brockwells alleged that the Slaydens breached their duty of care and proximately caused Justin Brockwell's death by:

   a. failing to properly adhere to the construction plans for the culvert;

   b. failing to adhere to proper industry standards in the construction of the culvert;

   c. failing to provide Justin Brockwell with a safe culvert in the event evasive action was required; and

   d. permitting an unreasonably dangerous condition to exist on the premises.

The Slaydens filed traditional and no-evidence motions for summary judgment asserting that the Brockwells had no claim for general negligence because their negligence claim sounds solely in premises liability. The Slaydens also maintained that they owed no duty to Justin Brockwell because they did not own or control the culvert, nor did they design, construct, or modify the

2

culvert, which was built before they purchased the property accessed by the driveway over the culvert. The Slaydens further argued that they had no duty to make any changes to the culvert because they were not notified and ordered by TxDOT to implement any changes nor had they constructed or reconstructed the access driveway. The Slaydens asserted that they did not breach any duty willfully, wantonly, or through gross negligence nor did they proximately cause Justin Brockwell's injuries.

The Slaydens attached evidence to their motion for summary judgment, including the affidavit of Soloman Thomas, a TxDOT Area Engineer, who averred that (1) the concrete culvert is located in the TxDOT highway right-of-way; (2) the culvert was originally built before 2009, the year that the Slaydens purchased their property; and (3) all construction of or modifications to access driveways such as the Slaydens' can only legally be made with TxDOT's approval. Thomas further averred that landowners are not required to make changes or updates to existing access driveways to comply with evolving TxDOT safety standards unless ordered to do so or unless they construct or reconstruct an access driveway.

The Brockwells filed a response to the motions for summary judgment, arguing that the motions should be denied because (1) the Slaydens had a duty to warn emergency trespassers or licensees of known, dangerous conditions on the premises, (2) the Slaydens failed to alert Justin Brockwell about the "deadly culvert," (3) the culvert was an unreasonably dangerous condition, and (4) the Slaydens failed to make the culvert reasonably safe for Justin Brockwell and others similarly situated. The Brockwells also maintained that the Slaydens had possession and control of the culvert.

3

After the hearing, the trial court granted the Slaydens' motions for summary judgment without specifying the grounds on which it relied and rendered judgment that the Brockwells take nothing on their claims against the Slaydens. This appeal followed.

## DISCUSSION

We review the granting of a motion for summary judgment de novo.[2] *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012). When the trial court does not specify the grounds for its ruling, summary judgment must be affirmed if any of the grounds on which the judgment was sought are meritorious. *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency*, 390 S.W.3d 289, 292 (Tex. 2013).

On appeal, the Brockwells argue that summary judgment was improper because they raised genuine issues of material fact regarding the challenged elements of each of their claims. The Slaydens counter that, as a matter of law, they are entitled to summary judgment on the Brockwells' general negligence claim because the pleadings do not allege a cause of action for general negligence but instead could only reasonably be construed to allege a premises-liability claim. We first consider whether the Brockwells asserted a viable general negligence claim.

Under Texas law, a person injured on another person's property has two potential causes of action: (1) a negligence claim for negligent activity on the premises, or (2) a premises liability claim for an unreasonably dangerous condition on the premises. *Alvarez v. Salazar-*

_____

[2] The standards for reviewing a summary judgment are well established and undisputed on appeal. *See*, *e.g.*, *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* Tex. R. Civ. P. 166a(c), (i). Accordingly, we need not repeat them here.

*Davis*, No. 13-18-00366-CV, 2019 WL 5445215, at \*4 (Tex. App.—Corpus Christi-Edinburg Oct. 24, 2019, no pet.) (mem. op.) (citing *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992)). Although premises liability is a form of negligence, "[n]egligence and premises liability claims . . . are separate and distinct theories of recovery, requiring plaintiffs to prove different, albeit similar, elements to secure judgment in their favor." *DeLamar v. Fort Worth Mountain Biker's Ass'n*, No. 02-17-00404-CV, 2019 WL 311517, at \*3 (Tex. App.—Fort Worth Jan 24, 2019, pet. denied) (mem. op.) (quoting *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 472 (Tex. 2017)); *see also Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 529 (Tex. 1997) (stating that "[b]ecause premises defect cases and negligent activity cases are based on independent theories of recovery, a simple negligence [jury] question . . . cannot support a recovery in a premises defect case").

Negligent-activity and premises liability claims "involve closely related but distinct duty analyses." *United Scaffolding*, 537 S.W.3d at 471. Premises liability is a "special form of negligence in which the duty owed to the plaintiff depends upon the plaintiff's status on the premises at the time of the incident." *DeLamar*, 2019 WL 311517, at \*3 (quoting *Wyckoff v. George C. Fuller Contracting Co.*, 357 S.W.3d 157, 163-64 (Tex. App.—Dallas 2011, no pet.) (citing *Scott & White Mem'l Hosp. v. Fair*, 310 S.W.3d 411, 412 (Tex. 2010))). To prevail on a premises liability claim, a plaintiff must prove (1) actual or constructive knowledge of some condition on the premises by the owner; (2) that the condition posed an unreasonable risk of harm; (3) that the owner of the premises did not exercise reasonable care to reduce or eliminate the risk; and (4) that the owner's failure to use such care proximately caused the plaintiff's injuries, *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998), whereas under the common law doctrine of negligence, a plaintiff must prove (1) a legal duty owed by one person

5

to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach, *Helbing v. Hunt*, 402 S.W.3d 699, 702 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

A person injured on another's property may have either a premises liability claim or a negligence claim against the property owner. *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016). However, only one theory of recovery is available for any given set of facts. *Keetch*, 845 S.W.2d at 264. The lines between negligent activity and premises liability are sometimes unclear, since almost every artificial condition can be said to have been created by an activity. *See Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010). Therefore, determining whether a claim is one for a premises defect or general negligence "can be tricky." *DeLamar*, 2019 WL 311517, at *4 (quoting *Austin v. Kroger Tex. L.P.*, 746 F.3d 191, 196 (5th Cir. 2014), *certified question answered*, 465 S.W.3d 193 (Tex. 2015)). The policy undergirding this distinction is that negligence encompasses a malfeasance theory based on affirmative, contemporaneous conduct that caused the injury, whereas premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe. *See Del Lago Partners*, 307 S.W.3d at 776; *see also Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998) (explaining that negligent activity concerns "simply doing or failing to do what a person of ordinary prudence in the same or similar circumstances would have not done or done" while premises liability concerns "the failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier of [land] knows about or in the exercise of ordinary care should know about"). To determine on which side of the line a claim falls, Texas courts look to whether the activity that caused the condition was ongoing or had ceased when the injury occurred. *See Occidental Chem.*, 478 S.W.3d at 644; *Keetch*, 845 S.W.2d at 265.

6

Theoretically, a litigant may maintain causes of action for both general negligence and premises liability. *DeLamar*, 2019 WL 311517, at *4. However, to be viable, the general negligence theory of recovery must be based not on an injury resulting from the condition of the property, but on the defendant's contemporaneous activity. *Id.*; *see Mangham v. YMCA of Austin, Tex.-Hays Communities*, 408 S.W.3d 923, 929 (Tex. App.—Austin 2013, no pet.) ("A litigant may maintain causes of action for both general negligence and premises liability but under the general-negligence theory of recovery, the claimant's injury must result from the defendant's contemporaneous activity."). The "Texas Supreme Court has held that a premise-defect claim for purposes of the TTCA, as with the common law, is distinguished by 'a nonfeasance theory based on the owner's failure to take measures to make the property safe,' focusing on injury from a 'condition' of real property, as contrasted with 'affirmative, contemporaneous conduct by the owner that caused the injury.'" *Texas Facilities Comm'n v. Speer*, 559 S.W.3d 245, 256 (Tex. App.—Austin 2018, no pet.) (quoting *Sampson v. University of Tex.*, 500 S.W.3d 380, 388 (Tex. 2016)).

Thus, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe, negligent activity is a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury. *Alvarez*, 2019 WL 5445215, at *4. Here, the Brockwells' claim does not arise out of any negligent activity by the Slaydens but, instead, is a premises liability claim sounding in nonfeasance. *See Castro v. H.E.B. Grocery Co., L.P.*, No. 14-18-00277-CV, 2019 WL 2518481, at *4 (Tex. App.—Houston [14th Dist.] June 18, 2019, no pet.) ("Here, the Castros' negligence claim arises from an allegation of nonfeasance rather than any claim of malfeasance on HEB's part."). All of the allegedly negligent acts the Brockwells identify in their amended complaint

7

involve some failure to do something rather than affirmative and contemporaneous conduct by the Slaydens. The Brockwells alleged that Justin Brockwell was injured when his car collided with the vertical face of the culvert, which they contend constituted a dangerous condition known to the Slaydens that they failed to warn of or make reasonably safe. The Brockwells did not allege that Justin Brockwell was injured by any negligent activity on the Slaydens' part. *See Timberwalk Apartments*, 972 S.W.2d at 753 (stating that claimant did not allege she was injured "by or as a contemporaneous result of any activity of defendants" so required to state a negligent-activity claim). Moreover, there is no evidence that any contemporaneous, ongoing activity on the premises caused Justin Brockwell's death. The evidence established that the culvert was in the same condition that it had been since before the Slaydens purchased the property in 2009 and that they had not altered it in any way before Justin Brockwell crashed into it. The condition of the culvert did not result from any contemporaneous, ongoing activity. Because the Brockwells' general negligence claim does not sound in negligent activity, we conclude that it fails as a matter of law. The trial court properly granted summary judgment in the Slaydens' favor on the general negligence claim.

### *Premises liability*

We next consider whether the trial court erred in granting the summary judgment motion as to the Brockwells' premises liability claim. The Slaydens' motion for summary judgment asserted that they were not liable as a matter of law because they did not own, control, or have a right of control over the culvert at issue in this case. In support of their motion, the Slaydens offered summary-judgment evidence establishing that the culvert was in the right-of-way owned by TxDOT, that the Slaydens did not maintain the culvert itself, that the Slaydens did

8

not design or construct the culvert, and that they were not permitted to make any modification to either the access driveway or the culvert without TxDOT's approval. On appeal, the Brockwells argue that although the culvert is "legally" owned by TxDOT, the Slaydens exercised sufficient control over the culvert to be under the same duty as the owner to keep the premises in a safe condition. *See City of Denton v. Page*, 701 S.W.2d 831, 834 (Tex. 1986). The Brockwells point to evidence that the Slaydens mowed and otherwise maintained the driveway and grass surrounding the culvert and that they had at one time placed decorative lights on the driveway above the culvert. The Brockwells also note that after the culvert was damaged by Justin Brockwell's vehicle, the Slaydens coordinated its repair, which the Brockwells assert is evidence that the Slaydens exercised control of the culvert.

As an initial matter, evidence that the Slaydens mowed the area around the culvert and used and maintained the access driveway that ran over the culvert does not constitute evidence that the Slaydens controlled the culvert itself. "The relevant inquiry is whether the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it." *County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002). Furthermore, the evidence established that the Slaydens had to seek and obtain approval from TxDOT to make any repairs or modifications to the culvert, which was located in TxDOT's right-of-way. As the Slaydens point out, the need to obtain permission to make changes to the culvert establishes the opposite of control over the culvert. *See Rosenthal v. Boyd*, No. 03-11-00037-CV, 2013 WL 1876513, at *5 (Tex. App.—Austin May 1, 2013, no pet.) (mem. op.). In *Rosenthal*, this Court held that uncontroverted and undisputed summary-judgment evidence that the City of Austin, rather than the defendants, owned the right-of-way where the allegedly dangerous condition existed coupled with the fact that the City code

9

prohibited anyone from making improvements in the City's right-of-way demonstrated that the defendants did not exercise control over the premises necessary to give rise to a duty to the plaintiff. *Id.*; *see also Dixon v. Houston Raceway Park, Inc.*, 874 S.W.2d 760, 762 (Tex. App.—Houston [1st Dist.] 1994, no writ) (holding that the premises owner's duty does not extend beyond the limits of premises owners' control). Because the evidence conclusively establishes that the Slaydens did not own or control the culvert, the trial court properly granted their motion for summary judgment on the Brockwells' premises liability claim.

### Gross negligence

In addition to their general negligence claim, the Brockwells asserted that the Slayden's conduct constituted gross negligence as that term is defined in the Texas Civil Practice and Remedies Code section 41.011(11)(a)-(b). *See* Tex. Civ. Prac. & Rem. Code § 41.011(11). Gross negligence requires an objective element and a subjective element. *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014); *see* Tex. Civ. Prac. & Rem. Code § 41.001(11). First, "viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others." *Boerjan*, 436 S.W.3d at 311. Second, "the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others." *Id.* Under the objective element, an "extreme risk" is not a remote possibility of injury or even a high probability of minor harm, but "the likelihood of serious injury to the plaintiff." *Id.*; *Crooks v. Moses*, 138 S.W.3d 629, 640 (Tex. App.—Dallas 2004, no pet.). Under the subjective element, actual awareness means the defendant knew about the risk, but his acts or omissions demonstrated he did not care. *Boerjan*, 436 S.W.3d at 311.

10

After reviewing the summary judgment evidence, we conclude that the evidence presented does not raise a fact issue regarding whether the Slaydens were subjectively aware of an extreme degree of risk presented to motorists by the culvert. The Brockwells asserted that Justin Brockwell "unintentionally veered" off the road before striking the culvert, that the Slaydens were grossly negligent because they had actual, subjective awareness of the risk that a motorist would veer off the road and crash into the culvert, and that their failure to modify the culvert in the TxDOT right-of-way demonstrated that they did not care. The evidence on which the Brockwells rely to support the subjective element of their gross negligence claim are two previous events that occurred on the roadway at or near the Slaydens' property. In the first incident, an intoxicated driver veered off the opposite side of the road from their driveway and hit the Slaydens' mailbox. In the second incident, a truck "crashed and flipped" when it hit a culvert up the road from the Slaydens' property. The summary judgment evidence, however, does not show that the truck "flipped over" and, in fact, the deposition testimony submitted was that the truck did not flip over. Moreover, the summary judgment evidence does not include testimony that the Slaydens knew whether the culvert up the road was designed like the one at issue in this case. The only summary judgment evidence was Jamie Slayden's testimony that she believed the other culvert was "pipe and dirt" and did not recall how it was designed. Additionally, there was no evidence submitted to suggest that either driver suffered any serious bodily harm. Although the Brockwells argue that Jamie Slayden admitted that a culvert with a 90-degree face can be dangerous and that sloped culverts are designed to promote safety when vehicles veer off the road, Jamie Slayden's deposition testimony submitted to the trial court was that any accident can be dangerous, that this accident ended up being dangerous, and that sloped culverts "possibly" are designed for safety purposes. This evidence fails to raise a fact issue as

11

to whether the Slaydens were subjectively aware of any extreme risk to motorists posed by the culvert when the accident occurred as opposed to after it.

Moreover, even if the evidence raised a fact issue as to whether the Slaydens were subjectively aware of an extreme risk to motorists posed by the culvert, there was no evidence that they were consciously indifferent to it. Although the Brockwells argue that the Slaydens should have either modified the culvert or put up a warning sign about it, the evidence submitted to the trial court was that the Slaydens did not create or control the condition of the culvert. The evidence was that the culvert was subject to TxDOT oversight and that the Slaydens could not make alterations without TxDOT approval. Additionally, the Brockwells assert that the Slaydens had a duty to make the culvert safe by installing warning signs and reflectors, but there was no evidence that the proposed warning signs or reflectors would have prevented a vehicle from "unintentionally veering" off the roadway during the daylight and crashing into the culvert. We conclude that the summary judgment evidence does not raise a fact issue regarding whether the Slaydens were aware of and indifferent to an extreme risk to motorists posed by the culvert. The trial court properly granted the motion for summary judgment on the Brockwells' gross negligence claim.[3]

---

[3] The Brockwells argue for the first time on appeal that public policy supports imposing liability on property owners such as the Slaydens under the facts of this case. These policy based arguments were not presented to the trial court and are not preserved for appellate review. *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) ("[I]ssues a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion . . . ."). Moreover, to the extent the Brockwells urge this Court to impose duties beyond those currently recognized by the relevant caselaw, we would decline to do so. *See Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 565 (Tex. App.—Austin 2004, no pet.) ("As an intermediate appellate court, we are not free to mold Texas law as we see fit but must instead follow the precedents of the Texas

**CONCLUSION**

For the reasons stated in this opinion, we affirm the trial court's judgment.

_____

Thomas J. Baker, Justice

Before Chief Justice Byrne, Justices Baker and Smith

Affirmed

Filed:   January 7, 2022

---

Supreme Court unless and until the highest court overrules them or the Texas Legislature supersedes them by statute."). "We must, in short, follow the existing law rather than change it, and we have adhered to that basic limiting principle in a variety of contexts." *Anderson v. Archer*, 490 S.W.3d 175, 177 (Tex. App.—Austin 2016), *aff'd sub nom. Archer v. Anderson*, 556 S.W.3d 228 (Tex. 2018).