# NO. 12-07-00244-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DORRIS DeGRATE AND FRENCHELLE DeGRATE, APPELLANTS* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *EXECUTIVE IMPRINTS, INC., APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

Frenchelle DeGrate and his wife, Dorris DeGrate (collectively the "DeGrates"), appeal the trial court's summary judgment entered in favor of Appellee Executive Imprints, Inc. In one issue, the DeGrates argue that the trial court erred in granting Executive Imprints' no evidence motion for summary judgment. We affirm.

## BACKGROUND

On January 20, 2001, Ms. DeGrate lit a gel candle allegedly marketed by Executive Imprints, but manufactured by another entity. After allowing the candle to burn for approximately one hour, Ms. DeGrate blew on the flame in an attempt to extinguish it. Rather than being snuffed out, however, the size of the candle's flame increased dramatically. Ms. DeGrate reacted by dropping the candle into her kitchen sink and, as a result of her contact with the hot gel, suffered burns to her hands, her eyelid, and her body generally.

The DeGrates filed suit against Executive Imprints and others contending that Executive Imprints was liable to Ms. DeGrate under theories of negligence, negligence per se, gross negligence,

design defect, manufacturing defect, marketing defect, and breach of express and implied warranties. The DeGrates further alleged that Executive Imprints was liable to Mr. DeGrate for his loss of consortium. After adequate time for discovery had passed, Executive Imprints filed a no evidence motion for summary judgment as to all of the DeGrates' claims. The DeGrates responded,[1] arguing that more than a scintilla of evidence had been presented in support of their claims that Executive Imprints was negligent and that the candle was defectively designed and defectively marketed.

In support of their response, the DeGrates relied heavily on the affidavit and report of Harold Zeliger, Ph.D., a chemist. In his affidavit, Dr. Zeliger stated, in pertinent part, as follows:

> 1. The candle was dangerous and defective for the following reasons: (a) Its propensity to form a large hot molten liquid layer when burning [and] (b) [w]hen burning, the flame and the top part of the container were sufficiently hot, i.e., above the flash point of the candle, to result in the ignition and eruption of the molten liquid when it splashed against the hot container walls and/or the candle flame.
>
> 2. A method of producing scented candles is well known and established. Paraffin wax and other waxes, (beeswax, for example), burn safely without producing hot liquid layers that can splash and erupt.
>
> 3. The manufacturer could have tested the candle under actual use conditions to ascertain the dangers associated with the candle. Such testing would have readily revealed the problems with the candle that injured Ms. Degrate.

Dr. Zeliger's affidavit testimony supplemented the opinions he provided by way of his report, which was also part of the summary judgment record. Dr. Zeliger's report stated, in pertinent part, as follows:

> The following opinions are offered to a reasonable degree of scientific certainty:
>
> 1. The fact that Ms. DeGrate's first blow did not extinguish the flame indicates that the fire was a hot one. This is consistent with the inches high flame reported by Ms. DeGrate.
>
> 2. The eruption that occurred when the second extinguishing attempt was made further supports the hot fire opinion.

---

[1] The DeGrates' response also addressed the motions for summary judgment filed by two other defendants not parties to this appeal.

3.  The flash point of the candle was measured at 320 degrees F.  This is lower than the greater than 340 degrees F flash point on the Penreco MSDS.  The lower flash point can be attributed either to addition of lower flash additives to the basic gel material, to a bad batch of gel or both.

4.  The eruption of fire in the glass container is due to the splashing of the molten gel onto the hot surface of the glass above the liquid line when Ms. DeGrate attempted to blow the candle out.  The glass above the liquid line was in the area of the high flame and subject to being heated above the 320 degree flash point.  Upon contact with the hot glass, the liquid vaporized, was subjected to a temperature that exceeded the flash point and ignited spontaneously.

5.  The warning label on the gel candle failed to warn Ms. DeGrate that an eruption such as that she was subjected to could occur.  The directions for use did not warn her of the potential for eruption when the candle was being moved.

6.  The manufacturer and suppliers of the various components failed to properly test the gel candle before its sale.  Flash point testing alone is insufficient to establish safety.

Subsequently, the trial court granted Executive Imprints' no evidence motion for summary judgment.  Thereafter, the trial court severed the DeGrates' claims against Executive Imprints from the remaining claims against the other defendants.  This appeal followed.

## STANDARD OF REVIEW

After adequate time for discovery, a party, without presenting summary judgment evidence, may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i).  The motion must state the elements as to which there is no evidence.  *Id.* The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.  *Id.*  The movant need not produce any proof in support of its no evidence claim.  *See id.*; *see also* Judge David Hittner and Lynne Liberato, *Summary Judgments in Texas,* 34 HOUS. L. REV. 1303, 1356 (1998).  The motion must be specific in alleging a lack of evidence on an essential element of a cause of action, but need not specifically attack the evidentiary components that may prove an element of the cause of action.  *See Denton v. Big Spring Hosp. Corp.*, 998 S.W.2d 294, 298 (Tex. App.–Eastland 1999, no pet.).  Once a no evidence motion has been filed in accordance with Rule 166a(i), the burden shifts to the nonmovant to bring forth evidence that raises a fact issue on the challenged evidence.  *See Macias v. Fiesta Mart, Inc.*, 988

3

S.W.2d 316, 316–17 (Tex. App.–Houston [14th Dist.] 1999, no pet.). A no evidence motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If the evidence supporting a finding rises to a level that would enable reasonable, fair minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *See Havner*, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, and the legal effect is that there is no evidence. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

On appeal, we will uphold a no evidence summary judgment only if the summary judgment record reveals no evidence of the challenged element, i.e., (a) there is a complete absence of evidence as to the challenged element; (b) the evidence offered to prove the challenged element is no more than a mere scintilla; (c) the evidence establishes conclusively the opposite of the challenged element; or (d) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove the challenged element. *See Taylor-Made Hose, Inc. v. Wilkerson*, 21 S.W.3d 484, 488 (Tex. App.–San Antonio 2000, pet. denied) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX. L. REV. 361, 362–63 (1960)).

In determining whether an appellant has raised more than a scintilla of evidence regarding the grounds on which a no evidence motion for summary judgment was based, we are limited to the summary judgment proof produced in the response. *See Webb v. Robins*, No. 03-07-00686-CV, 2008 WL 2777399, at *5 (Tex. App.–Austin July 17, 2008, no pet. h.). When presenting summary judgment proof in response to a no evidence motion, a party must specifically identify the supporting proof on file that it seeks to have considered by the trial court. *See Arredondo v. Rodriguez*, 198 S.W.3d 236, 238 (Tex. App–San Antonio 2006, no pet.); *see also* Tex. R. Civ. P. 166a(i) cmt. ("To defeat a motion made under paragraph (i), . . . [a nonmovant's] response need only point out evidence that raises a fact issue on the challenged elements."). Referencing attached documents only generally does not relieve a respondent of directing the trial court to where in such documents the issues set forth in the response are raised. *See Arredondo*, 198 S.W.3d at 238–39. Neither this court nor the trial court is required to wade through a voluminous record to marshal a respondent's proof.

4

*Id.* at 238. Furthermore, we are not free to search the entire record, including materials not cited to or relied on by the trial court. *Id.* at 239. Likewise, on appeal, an appellant has a duty to show that the record supports its contention. *See* TEX. R. APP. P. 38.1(h).

## NEGLIGENCE PER SE, MANUFACTURING DEFECT, BREACH OF IMPLIED AND EXPRESS WARRANTIES, AND GROSS NEGLIGENCE

As part of their sole issue, the DeGrates argue that the trial court erred in granting summary judgment on their causes of action of negligence per se, manufacturing defect, breach of implied and express warranties, and gross negligence. Executive Imprints' no evidence motion for summary judgment expressly requested summary judgment as to these claims in compliance with Rule 166a(i). In their response, the DeGrates failed to raise any challenge to Executive Imprints' no evidence motion with regard to the contested elements of these claims.

We iterate that when presenting summary judgment proof in response to a no evidence motion for summary judgment, a party must specifically identify the supporting proof on file that it seeks to have considered by the trial court. *See **Arredondo***, 198 S.W.3d at 238. In the instant case, since the DeGrates did not include any argument or identify any supporting proof pertaining to the challenged elements of their claims of negligence per se, manufacturing defect, breach of implied warranties, breach of express warranties, manufacturing defect, and gross negligence, we hold that the trial court properly granted Executive Imprints' no evidence motion for summary judgment as to those claims. Therefore, to the extent that the DeGrates' sole issue pertains to their causes of action of negligence per se, manufacturing defect, breach of implied and express warranties, and gross negligence, it is overruled.

## NEGLIGENCE

The DeGrates further contend as part of their sole issue that the trial court erred in granting summary judgment on their negligence cause of action. In its motion, Executive Imprints contended that there was no evidence that it owed a duty to warn the DeGrates of any risk or risk avoidance measure associated with the candle in question, that it breached any duty to the DeGrates in the design, manufacturing, marketing, distributing, and placing into the stream of commerce the candle in question, or that the breach of any duty by Executive Imprints proximately caused the DeGrates'

5

alleged injuries.

The DeGrates argue that the opinion of Dr. Zeliger contains more than a scintilla of evidence with regard to the existence of a duty owed to the DeGrates by Executive Imprints.[2] Yet, the DeGrates' brief makes only general reference to the evidence they contend supports their negligence cause of action, and, therefore, does not meet the standard set forth by Texas Rule of Appellate procedure 38.1(h). Nonetheless, even if we assume that the DeGrates' briefing in this case rises to the minimum level required by Rule 38.1, the outcome would not differ.

To prevail on a claim of negligence, a plaintiff must prove a legal duty owed to the plaintiff by the defendant, breach of that duty, and damages to the plaintiff proximately caused by the breach of the duty. *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 376–77 (Tex. 1984). To prove an action for negligence, the plaintiff must establish the defendant had a legal duty. *See Graff v. Beard*, 858 S.W.2d 918, 919 (Tex. 1993); *see also Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 591 (Tex. 1986) (a manufacturer, as well as all suppliers of a product, has a duty to inform users of hazards associated with the use of its products). A duty is a legal obligation that requires the defendant to conform to a certain standard of conduct. *See Way v. Boy Scouts of Am.*, 856 S.W.2d 230, 233 (Tex. App.–Dallas 1993, writ denied). Every person has a duty to exercise reasonable care to avoid a foreseeable risk of injury to others. *Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 403 (Tex. App.–San Antonio 2000, no pet.). The existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983).

To determine whether a duty exists under common law, we apply a risk-utility balancing test. *See Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 736 (Tex. 1998). We consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the

---

[2] The entirety of the DeGrates' briefing on the issue of negligence reads as follows:

> In regard to [the DeGrates'] allegation that [Executive Imprints] engaged in conduct constituting negligence, [the DeGrates] would show that the summary judgment testimony of [the DeGrates'] expert [presented evidence of] the existence of a duty owed to the [DeGrates], a clear breach of that duty and damages resulting therefrom that were the proximate cause thereof.

consequences of placing the burden on the defendants. *See **Bird v. W.C.W.***, 868 S.W.2d 767, 769 (Tex. 1994). When these facts are balanced, the most important factor to consider is the foreseeability of the risk. *See **Tex. Home Mgmt. v. Peavy***, 89 S.W.3d 30, 36 (Tex. 2002). The test for foreseeability is what a person should, under the circumstances, reasonably anticipate as a consequence of her conduct. *See **Foster v. Denton ISD***, 73 S.W.3d 454, 465 (Tex. App.–Fort Worth 2002, no pet.). Foreseeability alone, however, is not enough to create a duty. ***Golden Spread Council v. Akins***, 926 S.W.2d 287, 290–91 (Tex. 1996). Additionally, we consider (1) whether one party had a superior knowledge of the risk, *see **Graff***, 858 S.W.2d at 920, (2) whether a party had a right to control the conduct of another, ***id.***, (3) whether societal changes require the recognition of new duties, *see **Clark***, 668 S.W.2d at 310, (4) whether the creation of a new duty would be in conflict with existing statutory law, *see **Thapar v. Zezulka***, 994 S.W.2d 635, 639–40 (Tex. 1999), and (5) whether there are countervailing concerns that would support or hinder the recognition of a new duty, *see **Bird***, 868 S.W.2d at 769.

Anticipation of consequences is a necessary element in determining whether a particular act or omission is actionably negligent. *See **Houston Lighting & Power Co. v. Brooks***, 161 Tex. 32, 336 S.W.2d 603, 606 (Tex. 1960). In other words, though a person's act or omission may have caused injury or damage, the person is not to be held responsible or negligent if he or she could have foreseen the harmful occurrence or situation. *See **Ortega & Sons v. El Paso Elec. Co.***, 381 S.W.2d 147, 149 (Tex. App.–El Paso 1964, no writ). Actual anticipation is not the test; the test is what one should, under the circumstances, reasonably anticipate as consequences of his conduct. ***Id.*** Moreover, foreseeability does not require the actor to anticipate the specific incident or precise manner of injury, but only requires that he reasonably anticipate the general character of the injury. ***Lukasik***, 21 S.W.3d at 403–04.

In the case at hand, the DeGrates' sole support for their response to Executive Imprints' motion with regard to their negligence claim is Dr. Zeliger's expert opinion testimony. However, Dr. Zeliger's opinion testimony is less than thorough. Dr. Zeliger's testimony does not support that Executive Imprints had knowledge of the risks associated with the candle or controlled the actions of the manufacturer. In fact, Dr. Zeliger provides no support for the proposition that the suppliers of the candle, which would include Executive Imprints, failed to test the candle. Moreover, Dr. Zeliger offers no testimony that a supplier of such a candle typically conducts such testing. Based

7

on our review of Dr. Zeliger's testimony, we cannot uncover even a scintilla of evidence concerning knowledge of risk, foreseeability, the likelihood of injury, the social utility of the conduct at issue, or any other evidence that might appropriately be employed in risk-utility analysis. Therefore, since the DeGrates failed to set forth a scintilla of evidence supporting the existence of a legal duty owed them by Executive Imprints, we hold that the trial court properly granted Executive Imprints' no evidence motion for summary judgment as to the DeGrates' negligence cause of action. To the extent that the DeGrates' sole issue relates to their allegations of negligence, it is overruled.

## DESIGN DEFECT

As part of their sole issue, the DeGrates further contend that the trial court erroneously granted summary judgment in favor of Executive Imprints on their design defect cause of action. To prevail on a design defect claim, a plaintiff must establish that (1) a safer alternative design existed and (2) the design defect was a producing cause of the personal injury for which the claimant seeks recovery. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.005(a) (Vernon 2005). "Safer alternative design" means a product design other than the one actually used that in reasonable probability (1) would have prevented or significantly reduced the risk of the claimant's personal injury without substantially impairing the product's utility and (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge. *Id.* § 82.005(b). Generally, these requirements necessitate competent expert testimony and objective proof that a defect caused the injury. *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004). Conclusory statements by an expert are not competent evidence and are insufficient to support or defeat summary judgment. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997).

Here, the DeGrates argue that Dr. Zeliger's expert opinion testimony supports the proposition that the candle was defectively designed.[3] But similar to its support of the DeGrates' response

---

[3] The DeGrates have again made a cursory argument in support of their contention that summary judgment was not proper with regard to their design defect claim. *See* TEX. R. APP. P. 38.1(h). The DeGrates' briefing of this issue reads, in its entirety, as follows:

> Under the doctrine of strict product liability, Appellants showed through the tendered summary judgment evidence that the candle was of a defective design since it was without a reasonable alternative design, as a fundamental element, marketed, manufactured and was unsafe for its purposes at the time it left

8

pertaining to their negligence claim, Dr. Zeliger's opinion testimony sets forth no basis of support for his opinion that the gel of the candle spontaneously ignited, that the glass of the candle was above the flash point for the gel, that a wax candle would not create a pool of hot liquid, or that Ms. DeGrates' injuries were caused by a defect in the candle. Thus, we hold that Dr. Zeliger's conclusory statements regarding a design defect are insufficient to defeat Executive Imprints' no evidence motion for summary judgment. *See Montgomery*, 951 S.W.2d at 466. As such, to the extent that the DeGrates' sole issue relates to their design defect cause of action, it is overruled.

## MARKETING DEFECT

As part of their sole issue, the DeGrates further contend that the trial court erroneously granted Executive Imprints' no evidence motion for summary judgment with regard to their marketing defect cause of action. To prevail on a marketing defect claim, a plaintiff must prove that the defendant knew or should have known of a potential risk of harm presented by the product, but marketed it without adequately warning of the danger or providing instructions for its safe use. *See Bristol-Myers Co. v. Gonzales*, 561 S.W.2d 801, 804 (Tex. 1978); *Ethicon Endo-Surgery, Inc. v. Meyer*, 249 S.W.3d 513, 516 (Tex. App.–Fort Worth 2007, no pet.). To support such a claim, the plaintiff must present evidence that (1) a risk of harm is inherent in the product or may arise from the intended or reasonably anticipated use of the product, (2) the product supplier actually knew or should have reasonably foreseen the risk of harm at the time the product was marketed, (3) the product possessed a marketing defect, (4) the absence of the warning or instructions rendered the product unreasonably dangerous to the ultimate user or consumer of the product, and (5) the failure to warn or instruct constituted a causative nexus in the product user's injury.

In its no evidence motion for summary judgment, Executive Imprints contended that the DeGrates presented no evidence (1) that the alleged risk of harm was inherent in the candle or might arise from the intended and reasonably anticipated use of the candle, (2) that Executive Imprints actually knew or should have known of an alleged risk of harm at the time the candle was marketed, (3) that the candle contained a marketing defect, (4) that the absence of a warning rendered the candle unreasonably dangerous, or (5) that Executive Imprints' failure to warn was a producing

---

control of Appellee and was sold posing an unreasonable risk factor for consumers.

9

cause of the DeGrates' damages.

Once again, the DeGrates' sole support underlying their response was Dr. Zeliger's opinion testimony. However, Dr. Zeliger's testimony failed to address each challenged element of the DeGrates' marketing defect claim. Neither Dr. Zeliger's affidavit testimony nor the opinions set forth in his expert report support that the absence of a warning rendered the candle unreasonably dangerous or that such was a producing cause of Ms. DeGrate's injuries. Therefore, we hold that the trial court properly granted Executive Imprints' no evidence motion for summary judgment on the DeGrates' marketing defect cause of action. To the extent that the DeGrates' sole issue relates to their marketing defect claim, it is overruled.

### MR. DeGRATE'S LOSS OF CONSORTIUM CLAIM

The DeGrates further argue as part of their sole issue that the trial court improperly granted summary judgment on Mr. DeGrate's loss of consortium claim. When a loss of consortium claim is derived from an injury to the spouse, the claim is derivative, and thus, must fail if the injured spouse's claims against the defendant fails. *See Brocken v. Entergy Gulf States, Inc.*, 197 S.W.3d 429, 440 (Tex. App.–Beaumont 2006, no pet.). Because Mr. DeGrate's loss of consortium claim is based on the injuries suffered by Ms. DeGrate and, further, because we have held that the trial court properly granted summary judgment on all claims made by Ms. DeGrate against Executive Imprints, it follows that the trial court properly granted summary judgment as to Mr. DeGrate's claim for loss of consortium. Therefore, to the extent that the DeGrates' sole issue relates to Mr. DeGrate's loss of consortium cause of action, it is overruled.

### DISPOSITION

Having overruled the DeGrates' sole issue, we *affirm* the trial court's judgment.


    BRIAN HOYLE
                    Justice


10

Opinion delivered August 6, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

11