



# OPINION

No. 04-08-00790-CV

Maria Del Refugio **GONZALES**, Individually and as Personal Representative of the Estate of
Guadalupe Cervantes, Deceased, and as next friend of Ana Noelia Cervantes and Gabriela
Cervantes, minor children; Ramiro Cervantes; Saul Cervantes; Joel Cervantes; Ana Rosa
Cervantes; and Araceli Cervantes,
Appellants

v.

John Morgan **O'BRIEN** III, Michael Fox O'Brien, and James Richard O'Brien,
Appellees

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 08-08-47273
Honorable Richard C. Terrell, Judge Presiding

Opinion by:   Steven C. Hilbig, Justice

Sitting:      Rebecca Simmons, Justice
              Steven C. Hilbig, Justice
              Marialyn Barnard, Justice

Delivered and Filed: October 28, 2009

AFFIRMED

Maria del Refugio Gonzalez, Individually and as Personal Representative of the Estate of

Guadalupe Cervantes ("Cervantes"), Deceased, and as next friend of Ana Noelia Cervantes and

Gabriela Cervantes, minor children, Ramiro, Saul, Joel, Ana Rosa, and Araceli Cervantes ("the

family") appeal the final judgment in favor of Michael Fox O'Brien, James Richard O'Brien, and John Morgan O'Brien III.  We affirm the judgment.

## BACKGROUND

John Morgan O'Brien ("O'Brien") owns a 15,000-acre ranch near Beeville, Texas.  He has three sons, John III, Michael, and James ("the brothers"), who work his ranch during the week and their own nearby ranches on weekends.  On June 20, 2007, Cervantes, a ranch hand employed by O'Brien for ten years, was moving large round bales of hay with O'Brien's 1969 John Deere tractor.  The tractor had a three-point fork attached to the front-end loader bucket.  While moving hay, a bale rolled back onto the tractor, trapping Cervantes.  The hay caught fire and Cervantes died.  There were no witnesses to the event.

The family sued the brothers[1] for various acts of negligence, alleging they should have warned Cervantes about the dangers of using a three-point hitch fork lift assembly on a John Deere tractor in the manner he was using it at the time of his death.  Although the lift assembly was designed to be attached to the rear of the tractor, it had been laid into the front loader bucket and chained at the top to prevent the hay from falling forward on the John Deere tractor.  The tractor had been used in this configuration for at least twenty years.

The family contends Cervantes was owed a duty under a risk-utility analysis because: (1) the risk, foreseeability, and likelihood of injury (death) were high; (2) the social utility of the O'Brien brothers' conduct was high (running a ranch); (3) the magnitude of the burden of guarding against

---

[1] The family also sued the John Deere dealership, the company that delivered the hay, and O'Brien; however, they are not parties to this appeal.

Cervantes's death and the consequence of placing the burden were low; and, (4) on balance, the risk/utility factors weigh in favor of imposing a duty to warn about a danger they knew or should have known about because they benefitted from the dangerous conduct. The family argues this is a limited duty to warn that arises only because the brothers benefitted from the work Cervantes was conducting when he was killed. The family asserts the brothers breached this duty and such breach proximately caused Cervantes's death.

The family also claims Michael and James owed a separate duty to warn of the dangers of moving round hay bales with the fork mounted on the tractor's front because they occasionally employed Cervantes to work their ranches on weekends. The family argues because James and Michael failed to warn Cervantes while he was working on their ranches, they breached their duty and this breach proximately caused his death.

The brothers sought summary judgment on the grounds the risk-utility test does not create a duty in the absence of any right of control and there is no evidence the brothers had (1) control over Cervantes's activities, (2) ownership or control over the premises, or (3) ownership or control over the tractor. Additionally, the brothers argued there is no evidence any danger was foreseeable or evidence their acts or omissions proximately caused Cervantes's death. Finally, James and Michael separately contend there is no evidence any alleged breach of a duty, as his weekend employers, to warn Cervantes of the dangers associated with the use of the tractor as it was rigged, was a proximate cause of Cervantes's death.

**STANDARD OF REVIEW**

We review a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We will affirm a judgment based on a no-evidence motion if the non-movant failed to present more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). In our review, we take as true all evidence favorable to the non-movant, and indulge every reasonable inference and resolve any doubts in the evidence in favor of the non-movant. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

**DISCUSSION**

***Duty***

Whether a duty exists is a "question of law for the court to decide from the facts surrounding the occurrence in question." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Generally, there is "no duty to take action to prevent harm to others absent certain special relationships[2] or circumstances." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000); *see also* RESTATEMENT (SECOND) OF TORTS § 314 (1965) ("The fact that [an] actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.").

---

[2] These special relationships have been found to exist between employer and employee, parent and child, and independent contractor and contractee under special circumstances. *See, e.g., Read v. Scott Fetzer Co.,* 990 S.W.2d 732, 735-36 (Tex. 1998); *Triplex Commnc'ns, Inc. v. Riley*, 900 S.W.2d 716, 720 (Tex. 1995); *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex. 1990).

However, this court can recognize a new duty based on the risk-utility balancing test. *See Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 736 (Tex. 1998). In applying this test, we consider interrelated factors including: risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct; the magnitude of the burden of guarding against the injury; and the consequences of placing the burden on the defendants. *See Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex. 1994). The balancing test generally begins with foreseeability of the risk. *See Tex. Home Mgmt. v. Peavy*, 89 S.W.3d 30, 36 (Tex. 2002). Foreseeability alone, however, is not sufficient to create a duty. *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 290-91 (Tex. 1996). Courts also consider:

> (1) whether one party had a superior knowledge of the risk, (2) whether a party had a right to control the conduct of another, (3) whether societal changes require the recognition of new duties, (4) whether the creation of a new duty would be in conflict with existing statutory law, and (5) whether there are countervailing concerns that would support or hinder the recognition of a new duty.

*DeGrate v. Executive Imprints, Inc.*, 261 S.W.3d 402, 409-10 (Tex. App. – Tyler 2008, no pet.)(citing *Thapar v. Zezulka*, 994 S.W.2d 635, 639-40 (Tex. 1999); *Bird*, 868 S.W.2d at 769; *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993); *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 310 (Tex. 1983)).

In *Wilhelm v. Flores*, 195 S.W.3d 96, 98 (Tex. 2006)(per curiam), the court determined whether a duty existed by focusing on the parties' relationship and the issue of control. The issue in *Wilhelm* was whether a seller of hived bees owed a commercial buyer's employees or agents a duty to warn them of the dangers associated with bee stings or to protect them from being stung. *Wilhelm*, 195 S.W.3d at 97. Curtis Wilhelm, who kept bees as a hobby, decided to sell his hives to

John Black, a commercial beekeeper. *Id.* Black bought the hives and returned the next day with two men to load them onto a trailer and take them away. *Id.* Black knew of the danger of an allergic reaction to bee stings, and provided protective suits, hats, veils, and gloves for himself and his men. *Id.* Wilhelm accompanied them, wearing his own protective gear, but he did not assist in the work. *Id.* There was no evidence that Wilhelm controlled Black's work or had the right to do so and Black alone directed the work of his men. *Id.* After the hives were loaded, one of Black's men was stung by a bee, suffered an allergic reaction, and died. *Id.*

The supreme court, applying the risk-utility test, held Wilhelm owed no duty to warn Black's men of the dangers associated with bee stings. *Id.* at 98. The supreme court focused on the relationship of the parties and recognized that even if Wilhelm hired Black as an independent contractor to move the beehives, Wilhelm would have owed Black's men no duty of care because Wilhelm did not control them. *Id.* It would have been Black's responsibility, not Wilhelm's, to warn his men of the danger of an allergic reaction. *Id.*

The family focuses its analysis on the risk-utility test and the benefit they believe the brothers received from Cervantes and their work on O'Brien's ranch to support creating a duty. The family ignores the brothers' lack of control over Cervantes, the property where the accident happened, or the equipment involved.

The evidence demonstrates the brothers and Cervantes worked on O'Brien's ranch loading and moving hay bales with the John Deere tractor owned by O'Brien. The brothers used some of the hay from O'Brien's ranch and the same tractor on their own ranches on weekends. There is no evidence the brothers in any way controlled Cervantes's work on their father's ranch, controlled the

property where the accident occurred, or created a dangerous condition the day of the unfortunate accident. The brothers and Cervantes were merely co-employees of O'Brien.

Regardless of the lack of control, the family argues a limited duty should be imposed because the brothers received personal benefits from the work the brothers and Cervantes did for O'Brien. The benefit referred to by the family is simply the brothers' personal use of the hay being moved on their father's ranch and the use of the John Deere tractor on their ranches. The family contends that creating a duty under these circumstances will encourage people "to speak up when they see that someone working for their benefit is in serious danger." The family has not cited any cases, nor has the court found any cases, that impose a duty among co-workers to warn of dangers associated with the work they perform because some of the workers receive a benefit other than being paid for their work. We hold the brothers did not owe Cervantes a duty while working with him as co-employees of O'Brien.

### Proximate Cause

The family also claims James and Michael's failure to warn Cervantes of the dangers of lifting round hay bales while in the course and scope of employment with them was a proximate cause of Cervantes's death.[3] The facts are uncontested that Cervantes was working for O'Brien on his ranch at the time of the accident. Cervantes's death occurred while he was performing an activity outside working hours for James and Michael and off their premises.

Proximate cause consists of cause in fact and foreseeability. *IHS Cedars Treatment Center*

---

[3] We do not address whether a duty existed or was breached because there is no evidence to a raise a fact issue on proximate cause.

*of Desoto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). Cause in fact is proven when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred. *I.H.S. Cedars Treatment Ctr.*, 143 S.W.3d at 799.

> The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred. *Lear Siegler*, 819 S.W.2d at 472 (quoting Restatement (Second) of Torts § 431 cmt. a (1965).

*Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 776 (Tex. 1995). The existence of a duty, a breach thereof, and cause in fact must occur within close enough proximity of the accident to be an active and efficient cause of the injury. *IHS Cedars Treatment Ctr.*, 143 S.W.3d at 799 (citing *Bell v. Campbell*, 434 S.W.2d 117, 122 (Tex. 1969)). Even if an injury would not have occurred but for the defendant's actions, the nexus between the defendant and the plaintiff's injuries may be too attenuated to constitute legal cause. *Id*. There must be a reasonable, significant causal connection between the conduct and the ultimate harm for proximate cause to exist. *See Givens v. M&S Imaging Partners, L.P.*, 200 S.W.3d 735, 739 (Tex. App.— Texarkana 2006, no pet.)(citing RESTATEMENT (SECOND) OF TORTS § 431 cmt. a (1965)).

Cervantes was outside the course and scope of his employment with James and Michael when he died. The circumstances giving rise to James and Michael's duty to warn, if any, had concluded before Cervantes's employment with O'Brien, O'Brien's failure to warn, and the accident on O'Brien's ranch. Any causal link between James and Michael's failure to warn is too attenuated from Cervantes's death.

There is no evidence to raise a fact issue on proximate cause.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Steven C. Hilbig, Justice