# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00498-CV

**Ronnie Lawson and Leah Lawson, Appellants**

**v.**

**Benjamin Keene, Kristi Keene, Gretchen Gayle Gullekson, Dayna Marie Twyman & KWI-8, L.L.C. d/b/a Keller Williams Realty, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. D-1-GN-11-003107, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Ronnie Lawson, who was married to appellant Leah Lawson, purchased a home from Benjamin and Kristi Keene.[1] The Lawsons later sued their real estate agent Dayna Twyman, the Keenes, the Keenes' real estate agent Gretchen Gullekson, and Keller Williams, Twyman and Gulleckson's sponsoring broker. The Lawsons alleged, in essence, that the defendants failed to disclose to the Lawsons that the actual square footage of the home was significantly less than the listed square footage.

In their amended petition, the Lawsons asserted causes of action for violations of the Texas Deceptive Trade Practices Act (DTPA), *see* Tex. Bus. & Com. Code §§ 17.41–.63, fraud in a real estate transaction and common law fraud, negligent misrepresentation, and breach of fiduciary

---

[1] For clarity, we will refer to the Lawsons and the Keenes by their first names. The parties dispute the extent to which Leah was involved in the home purchase.

duty. The defendants filed joint motions for traditional and no-evidence summary judgment. The trial court granted the defendants' motions in all respects except that the court denied the recovery of attorney's fees by Gulleckson and Twyman. Following a bench trial on the amount of attorney's fees, the trial court rendered a final judgment awarding fees to the Keenes and Keller Williams.

In four issues on appeal, the Lawsons challenge the trial court's grant of the defendants' motions for summary judgment and the award of attorney's fees. We will affirm the trial court's judgment.

## DISCUSSION

### *Summary judgment*

We review a trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When, as here, a trial court grants summary judgment but does not specify the grounds for granting the motion, we must uphold the judgment if any of the grounds asserted in the motion and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). In reviewing a trial court's ruling on summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve all doubts in the nonmovant's favor. *Id.* When a party moves for both traditional and no-evidence summary judgment, we ordinarily review the no-evidence grounds first. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

A no-evidence motion for summary judgment is a motion asserting that there is no evidence of one or more essential elements of a claim or defense on which the nonmovant would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i). A no-evidence summary judgment is

2

essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). A no-evidence summary judgment is properly granted when "(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Id.* "Thus, a no-evidence summary judgment is improperly granted if the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *Id.* More than a scintilla of evidence exists where the evidence, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005) (per curiam) (citing *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)).

We begin by reviewing the evidence that the Lawsons produced in response to the defendants' no-evidence motion for summary judgment. *See Merriman*, 407 S.W.3d at 248. In determining whether the Lawsons have raised more than a scintilla of evidence regarding the grounds on which the defendants based their no-evidence motion, we consider only the summary-judgment proof produced in the Lawsons' response. *See Webb v. Robins*, No. 03-07-00686-CV, 2008 WL 2777399, at *5 (Tex. App.—Austin July 17, 2008, no pet.) (mem. op.); *see also Gonzales v. Servs. Lloyds Ins. Co.*, No. 14-08-00377-CV, 2009 WL 1493039, at *2 (Tex. App.—Houston [14th Dist.] May 21, 2009, no pet.) (mem. op.); *DeGrate v. Executive Imprints, Inc.*, 261 S.W.3d 402, 408 (Tex. App.—Tyler 2008, no pet.) (citing *Webb*).

3

The Lawsons included three documents in their response to the defendants' no-evidence motion for summary judgment: (1) Gulleckson's deposition, (2) Ronnie's affidavit, and (3) a record purportedly obtained from the website of the Travis County Appraisal District (TCAD). Construed liberally in the Lawsons' favor, these documents constitute evidence of the following facts: Gulleckson, the Keenes' real estate agent, suspected that the TCAD record, which listed the home's size as 1,578 square feet, underestimated the home's total square footage. Gulleckson concluded that the TCAD record did not include a sunroom the Keenes had added to the home. Gulleckson therefore called Ben and asked him for the square footage of the sunroom, and Ben estimated that the sunroom was about 450 square feet. Neither Ben nor Gulleckson actually measured the sunroom. Gulleckson added Ben's estimate to that of the TCAD record and obtained a new total of 2,028 square feet, which she represented as the home's size in the MLS listing. Twyman, the Lawsons' real estate agent, later asked Gulleckson why the MLS number did not match the TCAD number, and Gulleckson explained that she had added 450 square feet for the sunroom. Twyman told the Lawsons to rely on her for information about the home, and the Lawsons did rely on Twyman for information about the square footage. No one told the Lawsons about the discrepancy between the MLS and TCAD numbers. The Lawsons later discovered that the TCAD record listed their home as having less square footage than they believed. The Lawsons allege that they suffered $50,000 in damages as a result.

At the heart of the Lawsons' claims is an assumption that it was wrongful for Gulleckson to add the estimated square footage of the sunroom to the TCAD listing in order to obtain the total square footage represented in the MLS listing. According to the Lawsons, the MLS

4

listing's representation of the square footage was false, and it was therefore deceptive and misleading for the defendants not to inform the Lawsons that the true square footage of the house was much less than the MLS listing represented. However, while the Lawsons assume that they received a house that was smaller than the one they bargained for, they did not produce any evidence in response to the no-evidence motion for summary judgment that the sunroom was less than 450 square feet or that the sunroom's area should not have been counted toward the total square footage along with the rest of the home. Nor did the Lawsons produce any evidence that the TCAD report constitutes the official representation of the home's square footage and that any contrary representation is false. Finally, the Lawsons produced no evidence that any of the defendants had an affirmative duty to disclose to them that the TCAD report and the MLS listing disagreed as to the home's size. The entirety of the evidence the Lawsons submitted in response to the no-evidence motion for summary judgment amounts to nothing more than a statement of the basic facts that Gulleckson added the additional square footage of the sunroom to the MLS listing and told Twyman. Without more, there is legally insufficient evidence to support the Lawsons' claims.

All of the Lawsons' claims except for breach of fiduciary duty contain as an element the requirement that the defendants made a false, deceptive, or misleading representation.[2] Because

---

[2] A DTPA claim requires that the defendant "committed a false, misleading, or deceptive act or practice." *Duran v. JB Goodwin Realtors*, No. 03-13-00179-CV, 2014 WL 4414816, at *5 (Tex. App.—Austin Aug. 29, 2014, pet. denied) (mem. op.) (citing Tex. Bus. & Com. Code §§ 17.41–.63 and *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996)). A claim for common-law fraud requires that the defendant made a "a material representation" that was false. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). A claim for fraud-in-the inducement requires that the defendant made a "material misrepresentation." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tex. 2011). A claim for statutory fraud in a real estate transaction requires that the defendant made a "false representation

5

the Lawsons did not produce any evidence of such a misrepresentation in their response, the trial court properly granted summary judgment on these claims. In addition, a claim for breach of fiduciary duty requires the plaintiff to prove both the existence of a fiduciary relationship and a breach of duty by the fiduciary. *See Pante Tech. Corp. v. Austin Concrete Solutions, Inc.*, No. 03-10-00059-CV, 2010 WL 3927598, at *8 (Tex. App.—Austin Oct. 7, 2010, no pet.) (mem. op.). As with their failure to present evidence of a misrepresentation, the Lawsons did not produce evidence that any defendant breached a fiduciary duty by failing to disclose that the TCAD square footage did not match the MLS square footage. The trial court therefore properly granted summary judgment on the Lawsons' claim for breach of fiduciary duty. Accordingly, we overrule the Lawsons' second issue.[3]

### Attorney's fees

The trial court awarded attorney's fees to the Keenes and Keller Williams based on Paragraph 17 of the contract for the sale of the Keenes' home to the Lawsons. Paragraph 17 of this form contract, which was promulgated by the Texas Real Estate Commission (TREC), provides:

---

of a past or existing material fact" or a "false promise to do an act." Tex. Bus. & Com. Code § 27.01(a). Finally, a claim for negligent misrepresentation requires that the "defendant supplies 'false information' for the guidance of others in their business." *Schwartz v. Gregg*, No. 03-09-00686-CV, 2010 WL 2977479, at *3 (Tex. App.—Austin July 28, 2010, no pet.) (mem. op.) (quoting *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

[3] In their first issue, the Lawsons challenge the trial court's grant of traditional summary judgment. Having concluded that the trial court properly granted the defendants' no-evidence motion on all of the Lawsons' claims, we need not decide whether the trial court properly granted the defendants' traditional motion. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013) ("[I]f the non-movant fails to produce legally sufficient evidence to meet his burden as to the no-evidence motion, there is no need to analyze whether the movant satisfied its burden under the traditional motion."). Therefore, we do not address the Lawsons' first issue.

ATTORNEY'S FEES: A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceedings.

In their third issue, the Lawsons contend that we must reverse the trial court's award of attorney's fees even if we do not reverse the summary judgment against them because (1) the contract does not provide for an award of fees in this litigation and (2) there is insufficient evidence to support the judgment because neither the defendants nor the trial court segregated recoverable from unrecoverable fees.[4] The Lawsons also contend that, in any event, the award against Leah is improper because she did not sign the contract containing Paragraph 17.

Generally, we review the decision by a district court to either grant or deny attorney's fees under an abuse of discretion standard. *See EMC Mortg. Corp. v. Davis*, 167 S.W.3d 406, 418 (Tex. App.—Austin 2005, pet. denied). The trial court abuses its discretion if it acts without reference to any guiding principles, and we must determine whether the trial court's action was arbitrary or unreasonable. *Id.* We review the amount of attorney's fees awarded under a legal sufficiency standard, viewing the evidence in a light that tends to support the disputed finding and disregarding evidence and inferences to the contrary. *Id.* "If more than a scintilla of evidence supports the challenged finding, the legal sufficiency challenge must fail." *Id.*

Under "the American Rule," "[a]bsent a contract or statute, trial courts do not have inherent authority to require a losing party to pay the prevailing party's fees." *Tony Gullo*

---

[4] The Lawsons also argue that the defendants were not entitled to attorney's fees because the defendants should not have been the prevailing parties in this suit. In light of our conclusion that the trial court properly granted summary judgment in favor of the defendants, we need not further address this question.

*Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). Here, the parties dispute whether the phrase "legal proceeding related to this contract" in Paragraph 17 allows for the recovery of fees in the present litigation, which does not involve a claim for breach of contract. The Lawsons urge us to interpret Paragraph 17 as applying only to disputes involving the interpretation or enforcement of the specific contract in which it appears, not to "the overall transaction." However, as the defendants point out, this Court has already decided that the language of Paragraph 17 of the TREC-promulgated contract allows defendants to recover attorney's fees even when the suit does not involve breach of contract. *See Sierra Assoc. Grp., Inc. v. Hardeman*, No. 03-08-00324-CV, 2009 WL 416465, at *9 (Tex. App.—Austin Feb. 20, 2009, no pet.) (mem. op.) ("Although based in tort and statutory causes of action, the litigated claims all relate to the sales contract . . . . We therefore reject Sierra's contention that its lawsuit was not 'a legal proceeding related to this contract' within the meaning of paragraph 17."); *see also Podder v. Funding Partners L.P.*, No. 03-09-00458-CV, 2010 WL 850175, at *5 (Tex. App.—Austin Mar. 12, 2010, pet. denied) (mem. op.) ("We do not read the language of the contractual provision authorizing attorney's fees to limit the recovery of fees to claims of breach of contract. Rather, the language broadly refers to all suits 'related to this contract.'").

The Lawsons acknowledge the tension between their arguments and this Court's holding in *Sierra* but urge us to reconsider our interpretation of Paragraph 17. Although the Lawsons argue that an intervening Texas Supreme Court opinion, *Epps v. Fowler*, undermines the reasoning of *Sierra*, the Lawsons do not argue, and we do not conclude, that the holding of *Epps* directly contradicts our holding in *Sierra*. *See Epps v. Fowler*, 351 S.W.3d 862 (Tex. 2011). The

8

question before the Court in *Epps* was "whether a defendant is a prevailing party entitled to attorney's fees when the plaintiff nonsuits a claim without prejudice," a question distinct from the one before us. *Id.* at 864. Because the Lawsons have not drawn our attention to a supreme court holding clearly on point, we decline to revisit the *Sierra* decision. *See Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 630 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Absent a decision from a higher court or this court sitting en banc that is on point and contrary to the prior panel decision or an intervening and material change in the statutory law, this court is bound by the prior holding of another panel of this court."); *see also Ayeni v. State*, 440 S.W.3d 707, 717 (Tex. App.—Austin 2013, no pet.) (Pemberton, J., concurring) ("We may not overrule a prior panel opinion of this court absent an intervening change in the law by the Legislature or a higher court or by decision of this court sitting en banc."). Therefore, we reject the Lawsons' argument that Paragraph 17 is inapplicable to the present dispute.

We now turn to the Lawsons' argument that insufficient evidence supports the trial court's judgment because the judgment "treats the award of attorney[']s fees as one undifferentiated mass" and the defendants did not segregate their attorney's fees by defendant or by claim. In response to this argument, the defendants contend that the Lawsons failed to preserve their segregation argument and that, in any event, the defendants were not required to segregate their fees because all the services their attorneys performed "related to disproving causation and reliance, elements common to all of the Lawsons' claims against all defendants." We agree that the Lawsons have waived their segregation argument, and we therefore need not decide whether the defendants were required to segregate their fees in this case.

9

As a general rule, "fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not." *Chapa*, 212 S.W.3d at 311. However, "if no one objects to the fact that the attorney's fees are not segregated as to specific claims, then the objection is waived." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997). "In a bench trial, such as was held here, the segregation issue must be raised at trial." *Horvath v. Hagey*, No. 03-09-00056-CV, 2011 WL 1744969, at *6 (Tex. App.—Austin May 6, 2011, no pet.) (mem. op.). Raising the segregation issue for the first time in a motion for new trial does not preserve error. *See id.*

During the bench trial, the Lawsons did elicit testimony from witnesses that the defendants' attorneys did not segregate their fees. However, the Lawsons did not object to testimony concerning the defendants' fees or to the admission of exhibits related to the fees on the ground that the fees had not been segregated. *See Chambers v. Ochiltree*, No. 03-04-00143-CV, 2004 WL 2814288, at *5 (Tex. App.—Austin Dec. 9, 2004, no pet.) (mem. op.) ("Chambers made no objection at trial to the testimony of Sterling and Henry's attorney as to his fees or to the introduction of his time records . . . . Chambers waived his objection by failing to raise it at trial."). Nor did the Lawsons present the segregation issue to the trial court in any "request, objection, or motion" at trial that required the court to decide the issue. *See* Tex. R. App. P. 33.1(a)(1). Therefore, the Lawsons have not preserved this issue for our review.[5]

---

[5] To the extent the Lawsons make a separate, more general argument that the evidence is legally insufficient to support the trial court's judgment, we reject that argument. At trial, the defendants presented testimony and time records in support of their fees. The defendants have produced more than a scintilla of evidence that they are entitled to the attorney's fees awarded by the trial court.

10

Finally, we must consider whether the trial court abused its discretion by ordering that the Keenes and Keller Williams recover attorney's fees from Ronnie and Leah "jointly and severally." The Lawsons argue that Leah cannot be liable for attorney's fees because she never signed the contract containing Paragraph 17, the fee-shifting provision. In response, the defendants argue that although their traditional summary-judgment motion asserted Leah's liability for attorney's fees, the Lawsons' response to that motion did not contest her individual liability. Therefore, the defendants argue, this Court should not reverse the trial court's order on a ground not expressly raised in the Lawsons' response.[6]

Although Leah did not sign the contract for the sale of the Keenes' home, she has joined Ronnie in suing the Keenes for causes of action based on and related to that contract. The Lawsons allege in their amended petition that Leah and Ronnie jointly purchased the home from the Keenes. The Lawsons have also maintained throughout this litigation that: Leah has standing to sue; Leah played an active role in the process of purchasing the home; Leah "was induced to sign . . . paperwork needed for the closing"; the Lawsons intended Leah's name to be included on the deed; Leah is a consumer under the DTPA; and Leah is legally presumed to have a community-property interest in the home because she was Ronnie's spouse at the time of the purchase. Because Leah has chosen to join Ronnie's lawsuit, which depends on the contract for sale of the home, we conclude that Leah is equitably estopped from arguing that Paragraph 17 cannot be enforced against her. *See*

---

[6] We note the tension inherent in each party's position. The defendants argue, on the one hand, that Leah lacks standing because she was a stranger to the transaction of the home, and, on the other hand, that Leah should nevertheless be individually liable for fees along with Ronnie. Meanwhile, the Lawsons argue that Leah should *not* be liable for fees even though she has standing to bring claims related to the contract containing the fee-shifting provision.

11

*In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex. 2001) ("[A] litigant who sues based on a contract subjects him or herself to the contract's terms."); *see also Rachal v. Reitz*, 403 S.W.3d 840, 847 (Tex. 2013) (holding that the doctrine of direct benefits estoppel barred party's claim that arbitration provision in the trust was invalid because "[i]n accepting the benefits of the trust and suing to enforce its terms against the trustee so as to recover damages, Reitz's conduct indicated acceptance of the terms and validity of the trust"); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) ("Under 'direct benefits estoppel,' a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes."); *Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518, 520 (Tex. App.—Austin 1998, no pet.) ("[B]ecause Sherry's claims are so closely connected to and intertwined with her husband's, she is bound to the arbitration as a matter of contract law. While attempting to enforce the terms of the sales contract, Sherry cannot pick and choose which provisions apply; she is bound by all the contract terms.").

We conclude that Paragraph 17 of the contract allows for an award of attorney's fees in this litigation, that the Lawsons waived any argument concerning the defendants' failure to segregate fees, and that Leah is estopped from arguing that she cannot be held liable for fees. Accordingly, we overrule the Lawsons' third issue.[7]

---

[7] The defendants argued in their traditional motion for summary judgment that Leah lacked standing to bring her claims. In their fourth issue, the Lawsons contend that the trial court erred in granting summary judgment to the extent it concluded that Leah lacked standing. However, we have already determined above that the defendants are entitled to summary judgment on the basis of their no-evidence motion. We can affirm the trial court's grant of summary judgment on any ground raised in a summary-judgment motion and preserved for our review. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). Moreover, Paragraph 17 entitles the defendants

12

**CONCLUSION**

We affirm the trial court's judgment.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed: July 1, 2015

---

to attorney's fees as prevailing parties regardless of the ground on which they prevail. Because we would affirm the trial court's summary judgment and fee award whether or not Leah had standing, we need not address this question. *See Devon Energy Prod. Co. v. KCS Res., LLC*, 450 S.W.3d 203, 223 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (explaining that trial courts have jurisdiction to award attorney's fees against a plaintiff who lacks standing); *Save Our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 891 (Tex. App.—Austin 2010, pet. denied) (concluding that trial court had authority "to award attorneys' fees that were incurred in connection with claims over which the court determined it had no subject-matter jurisdiction").